202 N.J. Super. 520 (1984)
495 A.2d 476
PABLO NAVARRO, PLAINTIFF,
v.
PAULINA RODRIGUEZ, PAULINA ACEVEDO AND THE CITY OF NEWARK, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided December 12, 1984.
*521 Anthony L. Coviello for plaintiff (Linares & Seradzky, attorneys).
*522 Jeanne M. Damgen for defendant City of Newark (Rosalind Lubetsky Bressler, Corporation Counsel of City of Newark, attorney).
No appearance by defendants Paulina Rodriguez or Paulina Acevedo.

OPINION
VILLANUEVA, J.S.C.
The issue is whether a plaintiff has substantially complied with the notice provisions of the Tort Claims Act when he failed to answer most of the questions on the City's personalized notice of claim form.
The court finds that, although the plaintiff filed a notice of claim indicating an accident and the claimed municipal wrongdoing, his failure to provide the names of witnesses, physicians, property damage, wage or income loss and nature and extent of the injury, coupled with his refusal to return to the City an authorization for it to obtain medical records, did not constitute substantial compliance with the notice provisions of the Tort Claims Act.
This is a motion for summary judgment by the defendant, City of Newark to dismiss plaintiff's complaint for failure to comply with the notice provisions of the Tort Claims Act. Plaintiff was allegedly injured in a motor vehicle accident on March 6, 1983, when the car owned and operated by the plaintiff collided with a car driven by defendant, Paulina Acevedo, which was owned by Paulina Rodriguez. Plaintiff alleges that the traffic light at the intersection was malfunctioning at the time of the accident.
Plaintiff filed a notice of claim with the City on March 25, 1983, on the City's personalized notice of claim form. The only questions that the plaintiff answered were those required by N.J.S.A. 59:8-4. His description of the accident was "Claimant driving on Summer Avenue South entered the intersection at *523 Montclair Avenue when defendant went into intersection traveling West on Montclair Avenue causing accident. Lights were malfunctioning at the time of the accident." The other questions and answers (underlined) were as follows:
6. Furnish the name and address of City of Newark employee causing bodily injury or property damage: Unknown.
7. State the names and addresses of all witnesses known to you: To be determined through investigation.
8. If claim involves bodily injury, attach hereto full and complete copies of all reports of physicians or dentists, together with their final bills for services rendered: To be provided.
9. If claim involves property damage, attach hereto full and complete copies of all bills for services rendered in repairing said property, or sales receipts in case of replacement: To be provided.
10. If your claim for bodily injury required hospitalization, attach hereto full and complete copies of all hospital records and charges incurred: N/A
11. If you have engaged any expert witnesses in support of your claim, attach hereto full and complete copies of all reports of said experts: To be provided.
12. If you claim loss of wages or income, state the amount thereof, dates, and name and address of your employer. If self-employed, and you claim loss of income, state the amount thereof, dates, and the name and address of the person for whom you would have rendered services: N/A
13. If you claim permanent loss of function of any body member, identify same, the nature and extent of said loss, and the name and address of the physician who will so state: To be provided.
Shortly after the City received the notice of claim, it sent a letter dated April 7, 1983 to plaintiff's attorney, which stated: "We enclose herewith an authorization and a request for hospital and medical records which we have completed and request that you have your client sign. Please return the signed forms to this office in the enclosed, stamped, self-addressed envelope."
Plaintiff failed to respond to the request and to this day the City has received no information whatsoever from the plaintiff about his medical condition or treatment.
This complaint, which seeks damages for personal injuries, states that the plaintiff "suffered severe and permanent injury, permanent loss of bodily function ... and has been and will in the future be compelled to remain away from his usual employment." However, it was not until the oral argument on November *524 30, 1984 that the City learned that the plaintiff was first treated by a doctor on March 9, 1983 and claimed permanent disability for a soft-tissue injury to his back and neck.
N.J.S.A. 59:8-3 states:
No action shall be brought against a public entity under this act unless a claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter.
The Comment following this section explains the legislative policy behind this provision, which is that no suit shall be brought against a public entity unless a claimant has furnished the appropriate public entity with a notification of claim. The purpose of the claims notification requirement in this chapter is twofold: (a) to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; (b) to provide the public entity with prompt notification of claim in order to adequately investigate the facts and prepare a defense.
This section bars any suit unless there has been compliance with the provisions of N.J.S.A. 59:8-4, which requires the claimant to provide the following information in the notice of claim.
a. The name and post office address of the claimant;
b. The post-office address to which the person presenting the claim desires notices to be sent;
c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted;
d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim;
e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and
f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.
In addition, a public entity may adopt its own notice of claim form as authorized by N.J.S.A. 59:8-6, which requires information in addition to the requirements set forth in N.J.S.A. 59:8-4.

*525 A public entity may by rule or regulation adopt forms specifying information to be contained in claims filed against it under this act. Such forms shall include the requirements of 59:8-4 of this act and may include such additional information or evidence as (1) written reports of a claimant's attending physicians or dentists setting forth the nature and extent of injury and treatment, any degree of temporary or permanent disability, the prognosis, period of hospitalization, and any diminished earning capacity; (2) a list of claimant's expert witnesses and any of their reports or statements relating to the claim; (3) itemized bills for medical, dental, and hospital expenses incurred, or itemized receipts of payment for such expenses; (4) documentary evidence showing amounts of income lost; (5) if future treatment is necessary, a statement of anticipated expenses for each treatment.
In addition, the claimant may be required to submit to a physical or mental examination by a physician employed by the public entity and a claimant may be required to permit a public entity to inspect all appropriate records relating to his claim for liability and damages including, but not limited to, income tax returns, hospital records, medical records and employment records.
* * * * * * * *
The City of Newark has adopted such a form, which obviously was known to plaintiff's attorney because he used such a form.
Is the purpose of the notice requirement solely to alert a public entity that a claim is being made against it for a specific wrongful act, or is it also for the purpose of alerting the public entity about the nature and extent of the claimed injury so that the two purposes of the claims notification provision are satisfied?
The answer is that the Legislature obviously intended that it was for both purposes. See N.J.S.A. 59:8-6, Comment which states:
This provision is necessary in order to assure the fair and full disclosure of information necessary to the orderly and expedient administrative disposition of claims.
Rationale for requiring timely notice of a claim against a public entity has two distinct purposes: to expedite investigation with the hope of reaching nonjudicial settlement and to protect the public entity's access to current information about the incident giving rise to the claim. N.J.S.A. 59:8-8. Reale v. Tp. of Wayne, 132 N.J. Super. 100, 109 (Law Div. 1975). The *526 latter purpose was frustrated by the plaintiff when he failed to provide any information about his injury and then failed to return the medical information authorization form the City sent to his attorney shortly after the claim was filed.
The California Tort Claims Act contains a provision that permits a public entity to provide its own forms, but the claimant need not use that form, and a claim presented on a form provided pursuant to the statute is deemed to be in conformity with the requirements of the statute requiring only limited information. Cal.Gov't Code § 910.4.
In the preparation and drafting of the New Jersey act consideration was given to the California act and its background and impact. See Report of the Attorney General's Task Force on Sovereign Immunity (1972) Chapter 4. However, the New Jersey act does not reflect all the provisions contained in the California act. Unlike our statute, the California statute includes a fairly elaborate scheme for granting leave to file an untimely notice of claim. See Cal.Gov't Code §§ 911.2, 911.4, 911.6, 945.4 and 946.6(c)(2). Reale v. Tp. of Wayne, supra.
Our Legislature, in permitting the public entity to require additional information, chose to permit the public entity to require more information than is mandated by N.J.S.A. 59:8-4, affording the public entity the right to require information concerning medical reports, hospitalization, wage or income loss, and if future treatment is necessary.
If a plaintiff, such as this one, were to be permitted to avoid all the other questions authorized by the statute that a public entity may propound, N.J.S.A. 59:8-6 would serve no purpose. A construction that would make a statutory provision superfluous or meaningless is disfavored. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 68 (1978).
As can be seen by plaintiff's answers on his claim form, he failed to answer questions 6 through 13. For instance, he failed to supply the names and addresses of the witnesses. He also failed to give the name and address of the driver of the *527 other vehicle, merely referring to him as "defendant". This deficiency alone would probably not prevent a court from determining that there was substantial compliance because the City, as part of its investigation, routinely requests police reports, such as the one in this case. However, the police report indicates that the only person injured was the other driver. Therefore, the City could reasonably believe that the plaintiff herein received no injury as a result of this accident.
In response to the question regarding bodily injury requesting plaintiff to attach copies of all reports of physicians together with a final bill of services rendered, plaintiff answered "to be provided". What does this mean? It could mean that the plaintiff did not obtain any treatment from a physician, or that no bills had been rendered, or that the plaintiff did not give this information to his attorney. Plaintiff's attorney indicated at the hearing on this motion that the first treatment plaintiff received was on March 9, 1983. The City has still never received any information from the plaintiff or his attorney indicating the dates of treatment, the physicians involved or the nature and extent of his injuries.
Plaintiff answered the question with reference to property damage with the phrase "to be provided". The City, therefore, obviously did not know whether there was property damage, the extent of it or whether a claim was being made for it.
In response to the question about whether the injury required hospitalization, the plaintiff answered "N/A". The City could assume that it meant "not applicable", but could not know why it was not applicable, i.e., whether hospitalization was covered by Blue Cross or other insurance or whether there was no hospitalization or charges incurred.
Plaintiff answered the question requesting the names of any expert witnesses: "to be provided". The City did not know whether expert witnesses had been engaged, or what kind of expert witnesses they were.
*528 With reference to loss of wages or income, plaintiff answered "N/A". Does that mean that there was no loss of wages or income or that the loss was covered by insurance or that plaintiff was making no claim for lost wages or income? This answer becomes particularly inappropriate when the complaint alleges that the plaintiff has been and will in the future be compelled to remain away from his usual employment.
The answer to the final question contains the most serious deficiency. When plaintiff was asked about any claimed permanent loss of any function of any body member and the nature and extent of said loss, he answered "to be provided". The City still does not know what this claimed loss is because of this answer together with plaintiff's refusal to return to the City the authorization to obtain medical information and reports.
It is true that a lack of stated damages will not bar plaintiff's cause of action against a public entity if the amount of the damages is not known at time of presentation of claim. Dambro v. Union Cty. Pk. Comm., 130 N.J. Super. 450, 458 (Law Div. 1974). However, the deficiencies herein are much more than the failure to set forth the amount of damages.
There is a substantial difference between information not being available and not making an effort to obtain it. It is true that the notice of claim was filed shortly after the accident, but at that time some information was available and not disclosed. Surely plaintiff knew the name of the other driver, witnesses, treating physicians, the nature and probable extent of his injuries and the property damage.
The City has not received any information whatsoever from the plaintiff regarding all the information "to be provided". Plaintiff has still not provided the City with any bills from treating physicians or for any property damage. Finally, whether there is permanency and whether plaintiff has engaged any expert witnesses is still unanswered.
All of the missing information was within the control of and could have been obtained by the plaintiff.
*529 Moreover, all of the information asked for and not produced was essential for the City to adequately investigate the claim to prepare its defense and/or provide for an early settlement. How could the City adequately investigate the claim in order to determine the settlement value of the case? The City did not know what medical treatment, if any, the plaintiff had received or whether he was permanently disabled.
The plaintiff's failure to provide this information requested by the City, as well as his refusal to return the authorization for medical information, clearly deprived the City of the opportunity to conduct an early investigation. Now, at this late date, the City must respond to the complaint without having had such an opportunity. The purpose of the notice provisions in the Tort Claims Act is to prevent precisely the type of situation which the plaintiff created herein.
Therefore, the plaintiff has done very little of what was requested of him and what was required of him; while the City has done all that could be reasonably expected of it. Once a public entity adopts a personalized notice of claim form pursuant to N.J.S.A. 59:8-6, which requires information that is more detailed than is otherwise required, it is incumbent upon a claimant to provide the information requested in the form. If a claimant is unable to supply all the information within the 90-day period, he should so state on the form and supply the remaining information as it becomes available. In this case the attorney in his certification states that, at the time of filing the form, he did not have in his possession "the name, address, and report of any treating doctor; I knew that there was no hospitalization, and I did not have the name and address of any witnesses. At the time of the presentation of the claim, the notice contained all the information which I had in my possession."
The attorney may not have had this information but his client, who signed the form, certainly had much of the information.
*530 Where a notice to a public entity did not give a general description of the injuries sustained by plaintiff, such a defect cannot be remedied or its consequences avoided by subsequent proof of absence of intention to mislead, and the notice was fatally defective. Harris v. Housing Authority of City of Waterbury, 21 Conn. Supp. 132, 146 A.2d 418 (Super.Ct. 1958). Flynn v. First Nat'l Bank & Trust Co. of New Haven, 131 Conn. 430, 40 A.2d 770 (Supreme Ct. of Errors, 1944).
Total compliance with notice requirements is not necessary, substantial compliance may be sufficient. Dambro v. Union Cty. Pk. Comm., supra.; Vedutis v. Tesi, 135 N.J. Super. 337 (Law Div. 1975), aff'd., sub nom. Vedutis v. So. Plainfield Bd. of Ed., 142 N.J. Super. 492 (App.Div. 1976). Substantial compliance, however, is based on the notion that substantially all of the required information has been given to those to whom the notice should be given and that it has been given in a form which should alert the recipient to the fact that a claim is being asserted against the sovereign and the nature and extent thereof. To put it another way, substantial compliance means that the notice has been given in a way, which though technically defective, substantially satisfies the purposes for which notices of claims are required.
There is no question that in this case plaintiff has not only failed to comply with the requirements of the statute in form but also in substance. Lameiro v. West New York Bd. of Ed., 136 N.J. Super. 585, 588 (Law Div. 1975).
Plaintiff's attorney confuses substantial compliance with no compliance. Substantial compliance cannot be predicated upon no compliance, such as failure to answer any of the questions permitted by N.J.S.A. 59:8-6.
The doctrine of substantial compliance cannot cure the total omission of an essential element from a claim, or remedy a plaintiff's failure to comply meaningfully with Tort Claims Act. Loehr v. Ventura Community College Dist., 147 Cal. App.3d 1071, 195 Cal.Rept. 576 (Cal. App. 2 Dist., 1983). Plaintiff, *531 herein, did not comply meaningfully with his duty to supply relevant information.
The plaintiff further argues that the City is equitably estopped from raising the failure of plaintiff to adequately answer all questions on its form, because it never sent a letter to plaintiff informing him that his answers were deficient.
Plaintiff's attorney asserts: "In my experience in representing claimants against municipalities, including the City of Newark, I have on occasion filed, out of necessity, incomplete notices of claim and on those occasions, I have been advised by the municipality in writing that the notice was being considered incomplete and insufficient and requesting the additional information. As I stated, this did not happen in the instant case."
Therefore, the plaintiff contends that the City is estopped to deny the sufficiency of the notice of claim.
It is well settled that the notice requirements of the Tort Claims Act are subject to the application of estoppel principles. Hill v. Middletown Bd. of Ed., 183 N.J. Super. 36, 40 (App.Div. 1982), cert. denied 91 N.J. 233 (1982). A public entity will be estopped from asserting noncompliance with the notice provisions of the act "where the interests of justice, morality and common fairness dictate that course." Ibid.
The City did all that could be reasonably expected of it, and, therefore, the interests of justice and common fairness clearly indicate that there is no basis for applying estoppel principles against the City.
It is the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act and in accordance with the fair and uniform principles established in the Tort Claims Act. All of its provisions should be construed with a view to carry out the above legislative declaration. N.J.S.A. 59:1-2.
Motion to dismiss complaint against City is granted.