224 N.J. Super. 563 (1986)
540 A.2d 1350
ESTATE OF JAMES MCGRATH, JR., BY HIS EXECUTRIX, JEAN MCGRATH, AND 1200 OTHER INJURED RESIDENTS OF THE PASSAIC RIVER BASIN, PLAINTIFFS,
v.
NORTH JERSEY DISTRICT WATER SUPPLY COMMISSION, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Decided October 17, 1986.
*566 Michael Gordon and Harrison J. Gordon for Plaintiffs (Gordon and Gordon, attorneys).
Edwin R. Matthews for Defendants Borough of Pompton Lakes, Mayor Charles C. Romain, Jr., Chief of Police Joseph Sisco, Planning Board and Board of Adjustment (Budd, Larner, Gross, Picillo, Rosenbaum, Greenberg & Sade, attorneys).
Victor A. Rotolo for Defendants Township of Pequannock, Elizabeth A. Cass, Mayor; Belwyn Harper, Chief of Police; William M. Hutchinson, Township Engineer; John Szabo, Township Planner; Township of Pequannock Board of Adjustment; *567 Township of Pequannock Planning Board; Robert Ferritti, Pequannock Township Sub Code Official; W. Jay Wanczyak, Emergency Management Coordinator (R. Gregory Leonard, Victor A. Rotolo, attorneys).
Genise Titch for Defendants County of Essex; Peter Shapiro, Essex County Executive; Luna Mishoe, Director, Essex County Division of Planning (David H. Ben-Asher, attorney).
Stephen C. Orosz for Defendant E. Eugene Oross Associates (Puskas & Orosz, attorneys).
John S. Fitzpatrick for Defendants County of Passaic; James Iandoli, Civil Defense Director; Sally Tate, Deputy Civil Defense Coordinator; Thomas Farina, County Engineer and James Rogers, County Planner (Haggerty & Donohue, attorneys).
Michael J. Frank for Defendants Township of Wayne; Planning Board; Board of Adjustment; Walter J. Jasinski, Mayor; Robert H. Pringle, Chief of Police; Donald Giles, Town Planner; Thomas Mullaney, Municipal Disaster Control Director and Milton Muss (formerly Township Engineer) (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn and Lisowski, attorneys).
Philip F. Mattia for Defendants Passaic Valley Water Commission and Wendell Inhoffer, Chief Operating Officer (DeYoe, Heissenbuttel and Mattia, attorneys).
Michael Muscio for Defendants Borough of Lincoln Park; Stephen Marabeli, Mayor; Susan Small (Director of Development); Board of Adjustment; Planning Board and Jack Desch, Borough Engineer.
George G. Frino for Defendant North Jersey District Water Supply Commission (DeCotiis, Frino and Lundsten, attorneys).
Mark J. Nelson for Defendant Borough of Pompton Lakes (Vaccaro, Osborne, Curran & Murphy, attorneys).
*568 Raymond T. Coughlin for Defendant Passaic Valley Sewerage Commission (Lamb, Hartung, Gallipoli & Coughlin, attorneys).
Joseph P. Skripek for Defendant Township of Fairfield (Barbaris & Skripek, attorneys).
Donald S. Maclachlan for Defendant County of Morris (Connell, Foley & Geiser, attorneys).
Patrick J. Richardson for Defendants State of New Jersey, New Jersey Department of Environmental Protection; Robert E. Hughey, Commissioner; John W. Gaston, Director of Division of Water Resources; William A. Whipple, Assistant Director; Dirk C. Hoffman, Deputy Director; New Jersey Office of Emergency Management; New Jersey Department of Transportation; John P. Sheridan, Commissioner; Harold Spedding, Division of State Police. (Attorney General W. Cary Edwards, attorney).
Anthony C. Stuart for plaintiffs In Defense Of The Counterclaim Robert E. Ryan and Catherine M. Ryan, his spouse, individually and their minors, Wendy Ryan and Sean Ryan, by their guardian or natural parents. (Sellar, Richardson & Stuart, attorneys).

OPINION
SAUNDERS, J.S.C.
Plaintiffs have filed Motions requesting an Order declaring that plaintiffs' Notices of Claims filed pursuant to N.J.S.A. 59:8-1 et seq. to be timely filed and to permit the filing of late Notices of Claims pursuant to N.J.S.A. 58:8-9 on behalf of 26 plaintiffs. Defendants have filed a Motion to Dismiss the Complaint by reason of plaintiffs' failure to comply with the Tort Claims Act. Defendants have alternatively requested permission for discovery on this issue.
These motions present two issues for resolution.
*569 1. Have plaintiffs, who have filed Notices of Claims, substantially complied with the requirements of the Tort Claims Act?
2. Should plaintiffs, who have not filed Notices of Claims within 90 days, be granted leave to file late Notices pursuant to N.J.S.A. 59:8-9?
This case and the numerous claims filed herein arise out of record floods that occurred in northern New Jersey in the spring of 1984. Extensive rainfall fell on this part of the State on April 5, 6 and 7 resulting in flooding throughout the Passaic River Basin. Additional rainfall occurred the end of May and early June, 1984 creating additional flooding.
Major highways as well as local roads were impassable and closed for many days. Substantial portions of the municipalities of Fairfield, Lincoln Park, Pequannock, Pompton Lakes and Wayne were flooded as were other municipalities not parties to this suit. It has been estimated that 5000 people were driven from their homes and many were not permitted to return for many days. The residents in these communities sustained substantial property damage including complete loss of homes and personal effects in many cases. There were numerous injuries and at least two deaths occurred. President Reagan declared the Counties of Passaic, Essex, Morris and Bergen as disaster areas and eligible for Federal Disaster Relief. The Red Cross and other similar organizations established emergency shelters for the homeless.
After the flooding subsided, the victims began the task of resuming their lives and began the clean up and reconstruction that was necessary to make their homes habitable. While such reconstruction took place, many were forced to live in nearby motels or move in with relatives or friends. The court notes that this flood and its effect on the residents was the leading news topic in the media for several months. All local and state newspapers carried front page articles with photographs. The flood received widespread coverage on television with daily reports from the various municipalities. The flood, its causes and prevention continue to be topics for media coverage.
*570 Amidst this complete devastation 1,200 plaintiffs filed Notices of Claims with numerous state and local agencies and municipalities. Approximately 26 plaintiffs have failed to file Notices of Claims within 90 days and request leave to file late Notices pursuant to N.J.S.A. 59:8-9. Defendants contend that the Notices filed within 90 days failed to comply with the requirements of N.J.S.A. 59:8-4 and, with respect to certain municipalities, the plaintiffs failed to supply the information requested in Supplemental Claim forms which are required by those municipalities pursuant to N.J.S.A. 59:8-6. The plaintiffs in this case have filed a Complaint more than 50 pages in length which contains Thirty Counts running the gambit from negligence, strict liability, trespass and nuisance to violation of civil rights and inverse condemnation and makes claim for property damage, personal injuries, impairment of the quality of life and wrongful death. The Complaint demands both compensatory and punitive damages. There are now 58 defendants, which includes numerous public agencies and private individuals. It is with this background that the court must decide the within Motions.
At the outset, it should be noted that defendants' Motion is filed on behalf of all defendants, public and private. It is not disputed that the notice requirements of the New Jersey Tort Claims Act applies to public entities and not individuals and, for that reason, the defendants' Motion shall be denied insofar as it was filed on behalf of all individual defendants. It should also be noted that the Tort Claims Act does not apply to several of the causes of action, such as inverse condemnation and violation of civil rights. Obviously, the claims of the infant plaintiffs may not be barred by this Motion as the running of time is expressly tolled for infants. The running of time as to the derivative claims for parents is also tolled.
The New Jersey Tort Claims Act provides in N.J.S.A. 59:8-3 that no action shall be brought against a public entity *571 unless the claim upon which it is based shall have been presented in accordance with the procedure set forth. N.J.S.A. 59:8-8 requires that all claims be presented within 90 days after the accrual of the cause of action. N.J.S.A. 59:8-4 requires a claimant, or someone acting in his behalf, to provide the following information.
(a) The name and post office address of the claimant.
(b) The post office address to which the person presenting the claim desires notices to be sent.
(c) The date, place and other circumstances of the occurrence or transaction which give rise to the claim asserted.
(d) A general description of the injury, damage or loss incurred so far as it may be known at the time of the presentation of the claim.
(e) The name or names of the public entity, employee or employees causing the injuries, damage or loss, if known.
(f) The amount claimed as of the date of the presentation of the claim, including the estimated amount of any prospective injury, damage or loss insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount of the claim.
The purpose of the claims notification requirement is twofold.
(a) To allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit; and
(b) To provide the public entity with prompt notification of the claim in order to adequately investigate the facts and prepare a defense.
The defendants contend that notwithstanding the fact that the Notices were filed within the 90 days period, the Notices are, in fact, insufficient and invalid in the following manner:
1. Plaintiffs failed to provide a general description of the injury, damage or loss as required by paragraph (d).
2. Plaintiffs failed to provide the amount claimed as of the date of presentation of the claim together with the basis of computation of the amount claimed as required by paragraph (f).
The plaintiffs, in the claim forms filed on their behalf, with respect to paragraph (d)  damages, assert "Claimant suffered physical property damage and personal injuries due to the flooding." Defendants contend that such a blanket statement provides no information at all to defendants and that defendants have been deprived of the opportunity to determine the merits of any individual claim. Defendants state that some *572 information required under this paragraph was known to the plaintiffs as determined by defendants' analysis of supplemental claim information provided by plaintiffs' counsel in November 1985.
Defendants urge plaintiffs failed to satisfy paragraph (f) in that they provided only a blanket amount for each claimant. These amounts varied from a low of 1.5 Million to 2.25 Million with some of the claims asserting additional loss for equipment, vehicles, stock and work income. Defendants complain that there was no computation or breakdown of these claims whereas some of this information was known to the plaintiffs at the time the notices were filed.
Defendants further assert that the Notices of Claims are defective in that they made no attempt to identify the negligent act or acts committed by each defendant. They contend that no attempt is made to particularize the individual negligent acts of each public entity. Plaintiffs contend that they have satisfied paragraph (c) by stating that "On April 5, 6, 7 and May 29, 30, 31, June 1, 2, 3, 4, 5, 1984, the Passaic, Pompton and Wanaque Rivers flooded the properties listed on Schedule A."
The doctrine of substantial compliance has been invoked for the purpose of alleviating the hardship and unjust consequences which attend technical defects of otherwise valid claims where there is no prejudice to the public entity. Anske v. Borough of Palisade Park, 139 N.J. Super. 342 (App.Div. 1976). Substantial compliance exists where notification has been given in a way that substantially satisfies the purposes of the Act. Lameiro v. West New York Bd. of Ed., 136 N.J. Super. 585 (Law Div. 1975). Dambro v. Union County Park Comm., 130 N.J. Super. 450 (Law Div. 1974) validated a Notice of Claim where the claimant has made a bona fide attempt to comply and where there were improper verifications or descriptions of the place of the accident. In D'Eustachio v. Beverly, 177 N.J. Super. 566 (Law Div. 1979), the court found that the claimant's letter was in substantial compliance with the statute *573 and constituted notice under the Act. The letter claimed "extensive damages" and merely indicated that several horses were injured.
I am satisfied that, under all of the circumstances, the plaintiffs have substantially complied with N.J.S.A. 59:8-4. The widespread flooding commenced on April 5, 1984 and was not abated until after June 5, 1984. I am satisfied this was a continuing circumstance or incident which created tremendous upheaval in the lives and affairs of those living within the flood zone and find that plaintiffs, through their counsel, have acted in good faith to file a proper claim against the numerous public agencies that are involved in this litigation. Notice of Claim was filed in most instances by the end of June and, on other occasions, in early July 1984. This was at a time when many, if not all, plaintiffs were attempting to put their lives back together. Many residents had not yet returned to their homes. As indicated in Mr. Krautheim's affidavit (referred to below), many of the records and documentation were either destroyed in the floods or not available or packed away in storage. Other plaintiffs had given their bills and receipts to flood adjusters or submitted them for federal assistance and did not have them in their possession. Some businesses had not yet reopened. Damages and expenses were continuing on a daily basis. I am satisfied that the legislative purposes and goals of the statute have been met.
There is one additional aspect of defendants' Motion that must be met. Seven public agencies make the additional argument that supplemental claim forms required by those agencies pursuant to N.J.S.A. 59:8-6 were not completed by the plaintiffs. The statute permits a public entity, by rule or regulation, to adopt forms specifying information to be supplied in addition to the information required under section 4. The statute goes on to list the additional information which may be included, which information is very specific in nature. The agencies who claim the protection under this section of the statute are Pompton Lakes, Fairfield, Pequannock, Essex County, Lincoln *574 Park, Wayne and the State of New Jersey. Three of the agencies, Lincoln Park, Pompton Lakes and Wayne had not adopted supplemental claim forms at the time plaintiffs filed their Notices. Wayne's ordinance was not adopted until August 15, 1984; Pompton Lakes' form was not adopted until October 24, 1984 and Lincoln Park's form was not adopted until September 10, 1984. I am satisfied that the adoption of these forms cannot be retroactive to claim notices previously filed with those agencies. It was brought to the court's attention at the time of the oral argument that the State of New Jersey has not adopted its supplemental claim form pursuant to any rule or regulation as required by the statute and, therefore, plaintiff cannot be bound to comply with the State's supplemental form. It should also be noted that the State previously filed a Motion returnable June 21, 1985 requesting an Order to compel plaintiffs to provide complete Notices of Claim. The State did not assert that the claim should be dismissed for failure to satisfy the statute. This court is unable to determine the outcome of that Motion or even if the Motion were argued.
On July 5, 1984, the Township of Fairfield forwarded a letter to plaintiffs' counsel requesting that plaintiffs complete Fairfield's forms. On August 7, 1984, the Township again wrote to plaintiffs' counsel advising that it had not received claims on the municipal forms and further advising that the Township is closing its files. On October 10, 1984, plaintiffs' counsel provided Fairfield with supplemental Notices of Claims of the plaintiffs on Fairfield's forms. On October 25, 1984, Fairfield returned the supplemental Notices to plaintiffs' counsel, rejecting the same for the reason that its file was closed.
Pequannock Township, on date of August 20, 1984, requested supplemental claim forms to be completed. Plaintiffs did not respond to the Essex County or Pequannock requests. In November 1985, after litigation had commenced, plaintiffs submitted supplemental information to all parties concerning plaintiffs' claims. The supplemental information was contained in three cartons estimated to weigh 150 pounds.
*575 Defendants rely on Navarro v. Rodriguez, 202 N.J. Super. 520 (Law Div. 1984) in support of their position that plaintiffs' failed to comply with the statute in not completing supplemental Notices. For the reasons set forth above, the Motion by Pompton Lakes, Lincoln Park and Wayne must be denied. Provision for such Notices cannot be adopted retroactively. For the reasons stated above, the Motion by the State of New Jersey must be denied as their form of supplemental notice was not properly adopted pursuant to statute.
Fairfield, through its municipal attorney, closed its file on August 7, 1984, which was less than 90 days after the termination of the flood on June 5, 1984. Any effort by the plaintiffs to file proper claim notices thereafter would be futile since the Township had closed its file. This is evidenced by the fact that when plaintiffs did attempt to file completed Fairfield forms, they were returned. The Township of Fairfield is now estopped from complaining that its forms were not completed and filed within 90 days.
The position of Essex County and Pequannock present a more difficult situation. As the court pointed out in Navarro, if a plaintiff were to be permitted to avoid all of the other questions authorized by the statute that a public entity may propound, the statute would serve no purpose. I have reviewed the Claim Form provided by Essex County and Pequannock. Those forms called for specific information relating to the claim, witnesses, proof of loss, copies of bills, etc. For the reasons that I have explained earlier in this opinion, I am satisfied that the plaintiffs, even if they had used the appropriate forms supplied by Essex County and Pequannock, could not reasonably have supplied the specific information requested. As Mr. Krautheim pointed out in his affidavit in paragraphs 14 to 17, throughout the summer of 1984 the victims were still suffering from a severe disruption of their lives. Many of the plaintiffs had been uprooted from their homes for various lengths of time and the documents, records and belongings *576 were not in their possession. Many of the records and documentation were either destroyed in the floods or not available or packed away in storage at other locations. Other plaintiffs had given their bills and receipts to flood adjusters or submitted them for federal assistance and did not have them in their possession.
Defendants rely on Navarro (supra). While a decision of the trial court is entitled to respectful consideration by another trial court, it is not binding upon it. This court, therefore, could choose not to follow the Navarro decision. However, I choose not to take that approach. I am satisfied that there is substantial compliance under all of the peculiar and unusual circumstances in this case. Navarro, factually, does not apply to this case. Navarro dealt with a single automobile accident involving two vehicles and a claim brought by a single plaintiff. That is a far cry from the factual pattern in this case.
I do not mean to imply that whenever there are multiple plaintiffs represented by a single attorney that the plaintiffs need not comply with the strict requirements of the Tort Claims Act, nor that they need not provide the information requested in supplemental claim forms permitted by the statute. My ruling deals with the particular circumstances of this case.
The court now turns to plaintiffs' Motion requesting leave for some additional 26 plaintiffs to file late Notices under N.J.S.A. 59:8-9.
The claimant who fails to file Notice of Claim within 90 days may, at the discretion of a Superior Court Judge, be permitted to file such Notice at any time within one year after the accrual of his claim, provided that the public entity has not been substantially prejudiced thereby. Application to the court shall be made upon Motion showing sufficient reasons for the failure to file notice within time. N.J.S.A. 59:8-9.
Plaintiffs filed their original Notice of Motion for late Notice of Claim on March 15, 1985, well within one year of the floods. The filing with the court of a Motion for permission to *577 file a late notice will preserve plaintiffs' rights even if that Motion is not returnable until after the one year limit. Murray v. Barnegat Light House, 200 N.J. Super. 534 (App.Div. 1985). This Opinion should reflect the reasons why the Motion was not argued and decided until approximately one and one-half years after it was filed.
The Motion was originally returnable before a judge who subsequently retired. Because of the pending retirement, the entire case was then transferred to this court for case management. At that time, a review of the file revealed that a great number of defendants had not yet been served with process and many of those served had not answered. It was the opinion of the court, with no objection by counsel, that all pending Motions should be held in abeyance until it could be determined just who the proper defendants were and Answers filed by them. The original Case Management Order No. 1 dated November 4, 1985, in paragraph No. 6 provides that all Motions pertaining to service under the Tort Claims Act be stayed without prejudice. Case Management Order No. 2 dated June 25, 1986 provides for the argument of this Motion on October 3, 1986. This court felt that it was in the best interests of all of the parties, as well as conservation of judicial time, in having Motions dealing with Tort Claims Act heard at one time after all parties were joined in the action so that there would not be a duplication or repetition of the same Motion as new parties joined in the case. At any rate, the Motion has now been argued and is ready for decision.
The granting or denial of permission to file a late claim is a matter left to the sound discretion of the trial judge. Permission is contingent on plaintiffs satisfying the court that there are sufficient reasons for the claimants' failure to file within 90 days. The court must also determine whether the public entity will be substantially prejudiced by the granting of the request. A review of the Certifications filed by plaintiffs in support of the Motion for late filing evidences the type of *578 problems these parties faced following the flood. A few examples will suffice.
Francis DeFalco, Jr. certified that his family, consisting of his wife and two children, ages 10 and 6, were evacuated by rowboat during the flood of 1984. The family suffered over $33,000. in property damage and lost most of their clothing and personal possessions. During the same period of time, his father suffered a severe heart attack, was hospitalized and died.
Robert Gordon certified that he was in Japan on business during the flood of April 1984 and was traveling during the 90 days period after the floods. He claims property damage of over $100,000. and states that he was unable to obtain legal representation due to the extremely complex nature of the case. He certifies that his personal attorney would not represent him in the case.
Raymon Diaz certifies that, during the 90 days period after the flood, he was primarily concerned about the tremendous loss he had sustained, including the loss of his belongings, devastation of his home and relocation. He is a trucker and lost his truck in the flood, thereby losing his livelihood and means of transportation. His wife contracted hepatitis.
Louis Ciros certifies that on April 5, 1984, during the evacuation of his residence in Pompton Lakes, he was being carried out of the house in a wheelchair by six volunteer firemen who dropped the wheelchair, causing him to fall down the stairs. As a result, he was hospitalized until April 28, 1984 and then transferred to Kessler Institute for rehabilitation from May 21 through July 14, 1984. He has over $24,000. in medical bills. He states that his usual attorney would not become involved in the case because it was too complex.
Joel Goldman certifies that he and his wife lost over $50,000. in property damage. There was 9 feet of water and raw sewerage in his home. He states that the family lost most of their personal effects and that the 9 feet of water completely ripped *579 out the two levels in the home. He states that during the 90 day period after the flood, he was concerned primarily about the tremendous loss, the devastation of his home and the relocation of himself and his wife.
Cases should ordinarily be heard on their merit. Any doubt as to the sufficiency of reasons to excuse the late filing of a claim should be resolved in favor of the claimant. Dyer v. City of Newark, 174 N.J. Super. 297 (App.Div. 1980). The Act is silent as to what constitutes sufficient reasons for failure to file a timely notice and each case must be decided on the basis of its own facts. I have already made reference to the particular circumstances of this case and need not repeat them again. I am satisfied that these particular circumstances justify a finding of sufficient reasons for late filing. It is also obvious from a review of the pleading in this case that it is one of unusual complexity. Delays in obtaining legal advice due to the understandable reluctance of attorneys to handle a difficult and complex case is excusable and understandable. As Judge Bilder stated in Torres v. Jersey City Medical Center, 140 N.J. Super. 323, 327 "Inability to obtain representation can be as incapacitating as a physical incapacity."
I turn now to the question of whether late filing will substantially prejudice the public entities. The availability of information to the public entities is largely determinative as to the issue of prejudice. There is no substantial prejudice where the event is not obscure, unknown and unnoticed and, in fact, is the object of extensive news coverage. S.E.W. Friel Co. v. New Jersey Turnpike Auth., 73 N.J. 107 (1977). The defendants do not assert that the event, in this case the flood, was obscure, unknown and unnoticed. Concededly, it was the object of extensive news coverage and had a tremendous impact on the various public agencies and the public at large.
The fact of delay alone does not give rise to the assumption of prejudice; the public entity must present a factual basis for the claim of substantial prejudice. Kleinke v. *580 City of Ocean City, 147 N.J. Super. 575 (App.Div. 1977). I am satisfied that there is no substantial prejudice to the public entities involved in this Motion. The event of the flood created a disaster in the Passaic River Basin so devastating that the President of the United States publicly declared it a disaster area. It was the subject of front page headlines for weeks, if not months. Public agencies were criticized in the press for their handling of the flood. Defendant agencies cannot complain that they were unaware claims would be forthcoming from this "natural disaster". Headlines appeared in local newspapers indicating that residents were upset and were intending to sue over the flood damage. See The News (Paterson, New Jersey), Friday, June 1, 1984; Suburban Trends, June 3, 1984; The Home News, June 2, 1984; The Record (Hackensack, New Jersey), June 28, 1984; The News (Paterson), June 22, 1984. This is just a sampling of some of the news articles that appeared concerning potential lawsuits.
The defendant agencies in this case must defend the claims of more than 1200 plaintiffs which I find are properly filed within the 90 day time period required by the statute. Certainly, the inclusion of the additional 26 plaintiffs in this litigation cannot be deemed to be prejudicial to the defendants in any respect.

Conclusion
Plaintiffs' Motion for leave to file late notice of claims after the 90 day period is granted. Plaintiffs' Motion requesting a determination that Notice of Claims filed within 90 days are valid is granted. Defendants' Motion for dismissal of plaintiffs' claims is denied. Defendants' Motion in the alternative for leave to have discovery on the issues presented by these Motions is denied. The court is satisfied that the Motions may be properly decided on the papers. Discovery would serve no useful purpose and would merely extend and complicate what is already complex. Plaintiffs shall submit an Order conforming to this Opinion.