259 N.J. Super. 360 (1991)
613 A.2d 502
SEAN MURRAY AND RANDOLPH MORGAN, PLAINTIFFS,
v.
SHAWN M. BROWN, RANDOLPH MORGAN,[1] RONALD SNEAD AND CITY OF NEWARK, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
October 29, 1991.
*362 David A. Valvano, for Plaintiffs (Ronald Thompson, Attorney).
Kate M. Dwoskin-Smith, for Defendant, City of Newark (Glenn A. Grant, Attorney).
DONALD S. COBURN, J.S.C.
This case arises under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. Defendant City of Newark has responded to the complaint by the pending motion to dismiss grounded on plaintiffs' alleged failure to comply with N.J.S.A. 59:8-6, one of the Act's notice provisions. That section permits a public entity to obtain more detailed information on damages than is required by the standard contents of claim provision, N.J.S.A. 59:8-4, the requirements of which were admittedly satisfied. Plaintiffs contend that the doctrines of equitable estoppel and substantial compliance shield their right to a plenary trial on the merits. I agree.
On November 26, 1989, plaintiffs Sean Murray and Randolph Morgan were injured when the automobile in which they were passengers collided with a sanitation truck owned by defendant City of Newark and operated by its employee, defendant Ronald Snead. A Newark police officer arrived on the scene, took statements from the drivers, and prepared and filed an accident report. On or about December 15, 1989, the City of Newark received from plaintiffs' attorney a notice of claim which fully complied with N.J.S.A. 59:8-4.
On May 10, 1990, plaintiffs' attorney filed notices of claim on the specialized forms provided to him by the City at a time not indicated in the moving papers. Although many questions on these forms were not fully answered by plaintiffs' attorney, the City's only response was to send a letter to one of the plaintiffs, Sean Murray, advising him that his claim was incomplete for failure to provide "medical interim reports along with bills." The letter further advised: "The claim will not be processed *363 until all of the information required by law is furnished in detail, together with copies of all bills and reports." The City failed to contact or correspond with plaintiffs' attorney despite its undertaking, according to the language of its own specialized notice of claim form, to do precisely that.
In S.E.W. Friel Co. v. N.J. Turnpike Authority, 73 N.J. 107, 373 A.2d 364 (1977), the Supreme Court established the standard for evaluating when suits could be maintained against technical defenses set forth in the notice provisions of the Tort Claims Act. The case involved an application to file a late notice of claim. The Court directed that the judiciary should act "`to the end that wherever possible cases may be heard on their merits, and any doubts which may exist should be resolved in favor of the application.'" Id. at 122, 373 A.2d 364. There is no reason to suppose that the Court would want a different and stricter approach in regard to N.J.S.A. 59:8-6 than it adopted for N.J.S.A. 59:8-9. Furthermore, this approach accords with the intent of the Legislature to avoid inequitable results and to provide "fair and uniform policies" to control actions against public entities. N.J.S.A. 59:1-2. It is with these principles in mind that I will consider the application of equitable estoppel and substantial compliance in this matter.
The doctrine of equitable estoppel has been held to be a bar to notice of claim defenses under the Tort Claims Act in varying circumstances. Dambro v. Union County Park Comm., 130 N.J. Super. 450, 457-58, 327 A.2d 466, (Law Div. 1974); Anske v. Boro. of Palisades Park, 139 N.J. Super. 342, 350-51, 354 A.2d 87 (App.Div. 1976); Hill v. Middletown Bd. of Ed., 183 N.J. Super. 36, 41, 443 A.2d 225 (App.Div. 1982); Marley v. Bor. of Palmyra, 193 N.J. Super. 271, 299-300, 473 A.2d 554 (Law Div. 1983). In each instance the estoppel arose because the conduct of the governmental entity justified the injured party's belief that the former was not dissatisfied with the claim information as submitted. The general principle has been framed in these words:

*364 It is well settled that the notice requirements, being in the nature of limitations provisions, are subject to the application of estoppel principles. Hence, even if there is no substantial compliance with the notice provisions of the Tort Claims Act, a public entity will be estopped from asserting this defense "where the interest of justice, morality and common fairness dictate that course." Anske v. Boro of Palisades Park, 139 N.J. Super. 342, 348 [354 A.2d 87] (App.Div. 1976). Hill v. Middletown Bd. of Ed., 183 N.J. Super. 36, 40 [443 A.2d 225] (App.Div. 1982).
And in State v. United States Steel Corp., 22 N.J. 341, 358, 126 A.2d 168 (1956), the Court endorsed this expansive description of the doctrine:
"Equitable estoppel in the modern sense arises from the conduct of a party, using that word in its broadest meaning as including his spoken or written words, his positive action, and his silence or negative omission to do anything. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed or been enforceable by other rules of law, unless prevented by the estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel." 3 Pomeroy on Equity Jurisprudence (5th Ed. 1941) sec. 802. (Emphasis added.)
Newark relies upon Navarro v. Rodriguez, 202 N.J. Super. 520, 495 A.2d 476 (Law Div. 1984), as answer to the estoppel argument. However, in my view its result is incorrect and inconsistent with the philosophy of the cited trial court and intermediate appellate court cases and with the Supreme Court's decisions in S.E.W. Friel, and State v. U.S. Steel Corp., supra.
The Navarro notice of claim was filed within 30 days of the accident on the City's personalized notice of claim form. Most of the questions were answered "unknown" or "to be provided," although plaintiff did indicate the intersection where the automobile accident occurred and that the traffic lights were malfunctioning. The City's only response was to mail an authorization for medical records to plaintiff's attorney. The City never complained prior to suit with respect to the lack of information in the original filing. The Navarro court ruled that "[t]he City did all that could be reasonably expected of it, and, therefore, the interests of justice and common fairness clearly indicate that there is no basis for applying estoppel *365 principles against the City." 202 N.J. Super. at 531, 495 A.2d 476.
The claim notification provisions of the act were not intended to serve as a trap for the unwary. Nor, indeed, were they written as rules for the guidance of skilled legal craftsmen. The Legislature did not assume, nor intend to require, that in every instance attorneys would be involved in advancing claims against public entities. Rather, the primary purpose of these provisions was to enable the public entity to better protect itself by prompt investigation of a claim, if it desired to do so. A secondary purpose was to provide time prior to suit for amicable resolution of a claim. Anske v. Boro. of Palisades Park, supra, 139 N.J. Super. at 347, 354 A.2d 87. Nothing in the act evidences an intent that upon receipt of an inadequate notice of claim, a governmental entity should feel free to ignore the claimant in the hope that within a short time it might be able to use a technical cavil to avoid fair litigation.
When a governmental entity receives a claim, however defective, it is unreasonable for it to essentially disregard the claim because of deficiencies. The interests of justice and fairness require that the claimant be promptly advised of the deficiencies and that failure to cure will result in rejection of the claim by the entity and a possible loss of the right to maintain a civil action. Furthermore, if additional information is supplied by the claimant and the entity is still not satisfied, the claimant must be so informed if estoppel is to be avoided. Otherwise, the claimant has the right to assume that the information as given has been considered by the governmental entity to be sufficient for its purposes, whatever they may be. In this regard it has been aptly observed:
"If we say with Mr. Justice Holmes, `Men must turn square corners when they deal with the Government', it is hard to see why the government should not be held to a like standard of rectangular rectitude when dealing with its citizens." Note, 48 Harv.L.Rev. 1281, 1299 (1934-35).
The doctrine of substantial compliance provides an alternative basis for rejecting the City's motion to dismiss the complaint. *366 In Anske v. Boro. of Palisades Park, supra, the court said:
Notwithstanding the statutory provisions concerning notice, both California and our own State have relied upon the doctrine of substantial compliance with the statute for the purpose of alleviating the hardship and unjust consequences which attend technical defeats of otherwise valid claims. 139 N.J. Super. at 347 [354 A.2d 87].
Most of the information heretofore unavailable to the City related to the injured plaintiffs' medical condition. Within the 90 day period, the City had all information bearing on liability which plaintiffs could be expected to acquire. Thus, its ability to investigate its legal responsibility was not at all prejudiced.
As previously noted the purpose of the claim notification requirements of the Act is two-fold: to provide the public entity with prompt notification of the claim so that it may protect itself by investigating liability before circumstances change or witnesses are lost; and to provide time prior to suit for possible settlement without incurring litigation expenses. Logic and commonsense dictate that the first purpose is far more important than the second in insuring that public entities not be prejudiced because of the vastness of their holdings and wide range of their activities. Thus, where, as here, there is no failure on a plaintiff's part with respect to prompt advisement of all data required to investigate liability, the court should be far more inclined to avoid technical defeat of a perfectly valid claim.
Again the City relies upon Navarro v. Rodriguez, supra, but now in support of its contention that plaintiffs failed to substantially comply with N.J.S.A. 59:8-6. In granting in somewhat similar circumstances a City of Newark motion to dismiss a complaint based on lack of substantial compliance with the Act, the Navarro analysis focused primarily on the failure to provide specific items of damage information demanded by the City's personalized form. The information withheld was more extensive than that involved here. Thus, I view Navarro as *367 distinguishable in that more information was withheld from the City.
Furthermore, the issue of substantial compliance regarding withheld information on the extent of injury should be considered realistically in relation to whether settlement negotiations were actually hindered. Although Newark contends that plaintiffs' attorney's conduct impeded possible settlement, it is quite apparent that the City attorney had no interest in communicating with counsel on any subject, let alone settlement. In light of the circumstances, I am quite satisfied that plaintiffs' attorneys substantially complied with the Tort Claims Act. Guerrero v. City of Newark, 216 N.J. Super. 66, 522 A.2d 1036 (App.Div. 1987).
Finally, in assessing the application of both the doctrines of equitable estoppel and substantial compliance, the court should consider that there is no respect in which plaintiffs' own conduct may be faulted. Although the Appellate Division has held that generally an attorney's conduct in relation to the processing of such claims is imputed to the client, In re Matter of Roy, 142 N.J. Super. 594, 599-601, 362 A.2d 589 (App.Div. 1976), certif. den. 71 N.J. 504, 366 A.2d 660 (1976), in an analogous setting, though not arising under the Tort Claims Act, the Supreme Court has said the following with respect to visiting attorney errors on a client:
The sole cause of plaintiff's failure to commence an action properly is his former counsel's mistaken notice of the rudiments of federal court jurisdiction. We have previously noted that "it seems inequitable that an injured person * * * should be denied his day in court solely because of his ignorance, if he is otherwise blameless." Lopez [v. Swyer], 62 N.J. [267] at 274 [300 A.2d 563 (1973)]. When the ignorance is not the plaintiff's, but that of his previous attorney, it would be even more unjust to deny him an opportunity to prosecute his cause of action. Accordingly, we find that there was at least "minimal substantial compliance," Grubb v. J.C. Penney Co., Inc., 155 N.J. Super. 103, 106 [382 A.2d 405] (App.Div. 1978), with the requirements of the limitations statute. Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 194-95 [412 A.2d 122] (1980).
The motion to dismiss the complaint is denied.
NOTES
[1] The issue raised by plaintiffs' attorney's attempt to represent Morgan as a plaintiff while maintaining an action against him for Murray has been addressed in a separate opinion.