862 A.2d 1217 (2004)
373 N.J. Super. 625
Jennifer L. HENDERSON, general administratrix and ad prosequendum of the Estate of John Tyler Henderson, deceased, and John C. Henderson, individually, Plaintiffs-Appellants,
v.
Jeffrey HERMAN, M.D.; Robert S. Salston, M.D.; Old Bridge-Sayreville Medical Group PA; Smith, Nielson; Township of Old Bridge; Township of Old Bridge Police Department; April Tamula; Bill Lamarosa; Rob Ragazzo Rural Metro Ambulance Service; Medreq2; Robert Wood Johnson University Hospital/St. Peter's Medical Center, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued November 17, 2004.
Decided December 23, 2004.
*1219 Tommie Ann Gibney, Haddonfield, argued the cause for appellants (Andres & Berger, attorneys; Ms. Gibney, of counsel and on the brief).
Susan K. O'Connor, New Brunswick, argued the cause for respondent Harold Smith (Hoagland, Longo, Moran, Dunst & Doukas, attorneys; Ms. O'Connor, of counsel and on the brief).
Allen J. Baratz argued the cause for respondent Jeanette Nielson (Weiner Lesniak, attorneys; Mr. Baratz, of counsel and on the letter relying on the brief filed on behalf of respondent Harold Smith).
Lori A. Dvorak, North Brunswick, argued the cause for respondent Township of Old Bridge and Old Bridge Police Department (Lynch Martin, attorneys; Ms. Dvorak, of counsel and on the brief).
Before Judges KING, R.B. COLEMAN and HOLSTON.
The opinion of this court was delivered by
COLEMAN, R.B., J.A.D.
Plaintiffs, the Estate of a deceased child John Tyler Henderson (J.H.) and J.H.'s parents, Jennifer and John Henderson, individually, appeal from three separate orders entered on July 23, 2004, granting partial summary judgment under the notice provisions of the New Jersey Tort Claims Act (the Act), N.J.S.A. 59:1-1 to 59:12-3. More particularly, two of the orders bar plaintiffs' claims against defendants Harold Smith and Jeanette Nielson, respectively, due to plaintiffs' failure to name them specifically in their notice of tort claim filed within ninety days as required by N.J.S.A. 59:8-8, and the third order dismisses plaintiffs' state law tort claims against defendants Old Bridge Township and Old Bridge Township Police Departments (collectively referred to as Old Bridge) due to plaintiffs' failure to complete a supplemental notice of claim form adopted by Old Bridge under N.J.S.A. 59:8-6.[1] We reverse and remand the matter for further proceedings.
Plaintiffs allege that on March 21, 2002, J.H., a minor two and one-half years old, suffered irreversible brain damage and cardiac and respiratory arrest due to the failure of police dispatch and emergency and transport personnel to respond appropriately to a 911 call. They further allege that such failure to respond appropriately was a proximate cause of J.H.'s death on April 12, 2002.
On March 28, 2002, one week after the incident, plaintiffs requested documents regarding the 911 response, but were informed 911 telephone tapes, radio tapes and dispatch tapes are generally recycled after thirty days and that release of such materials in discovery requires both an appropriate court order and payment of proper fee. Accordingly, on April 11, *1220 2002, plaintiffs filed a verified complaint and order to show cause seeking to compel production of any and all 911 tapes, EMT records and documents pertaining to J.H. from March 21, 2002 and thereafter. On May 16, 2002, a consent order for the preservation and production of evidence was filed and, within two weeks, materials responsive to plaintiffs' request were released to plaintiffs.
On June 14, 2002, plaintiffs submitted a formal notice of claim to the Old Bridge Township Clerk and counsel for Old Bridge. The notice disclosed the date, place and circumstances of the occurrence giving rise to the plaintiffs' claim, stating:
On March 21, 2002, John Tyler Henderson, an infant, was caused to suffer irreversible brain damage, ultimately resulting in his death, due to the failure of police, dispatch and emergency medical and transport personnel to respond appropriately to a "911" call from Old Bridge Medical Group, 26 Throckmorton Lane, Old Bridge, NJ requesting emergent assistance.
The notice form asserted that the following public entities and public entity employees were involved:
A. Old Bridge Township, NJ, its agents, servants and/or employees, including, but not limited to, police dispatch and emergency medical and transport personnel;
B. Old Bridge Township Department of Public Safety, its agents, servants and/or employees, including, but not limited to, police dispatch and emergency medical and transport personnel;
C. Middlesex County, its agents, servants and/or employees, including, but not limited to, police dispatch and emergency medical and transport personnel;
D. Rural Metro Ambulance Service, its agents, servants and/or employees, including but not limited to dispatch and emergency medical and transport personnel;
E. Old Bridge First Aid and Rescue Squad, its agents, servants and/or employees, including but not limited to dispatch and emergency medical and transport personnel;

F. Madison Park Volunteer First Aid Squad, its agents, servants and/or employees, including but not limited to dispatch and emergency medical and transport personnel; and
G. Cheesequake Volunteer Fire Aid Squad, its agents, servants and/or employees, including but not limited to dispatch and emergency medical and transport personnel.
On June 21, 2002, Maryann Kojaza, a claims adjuster with Quality Claims, third-party administrators for the Township of Old Bridge, wrote to counsel for plaintiffs. She requested copies of medical reports, the death certificate and an autopsy report. She also forwarded what was described in her letter as "the proper Notice of Claim Form" to be completed in its entirety and returned. At the top of the claim form these words appeared: "This form must be filed within ninety (90) days of accident or occurrence or you may forfeit your rights (N.J.S.A. 59:8-1 et seq.)."[2] On the last page of the form was this additional statement:
All information requested in this form must be provided so that fair and full disclosure of information necessary to the orderly and expedient administrative *1221 disposition of the claim may be had. Under the scheme of the New Jersey Tort Claims Act, a governmental entity is afforded at least six months from the date of the receipt of a completed claim form to review and settle meritorious claims.
On July 12, 2002, a different claims representative, Richard Chimenti of Network Adjusters, Inc. wrote to counsel for plaintiffs. His letter stated that Network Adjusters was the authorized claim representative for Kemper/Kempers and that it would be handling the claim from its inception through disposition on behalf of Old Bridge First Aid and Rescue Squad. Shortly thereafter, on July 31, 2002, Ms. Kojaza of Quality Claims Adjusters again wrote to plaintiffs' counsel. In that letter, she informed plaintiffs that
We have completed our investigation. The Township of Old Bridge has no jurisdiction over any of the mentioned First Aid & Rescue Squads. Therefore, the Township of Old Bridge is not responsible for your loss, which responded to the 911 call, and accordingly, we are hereby denying your claim for damages.
Plaintiffs never completed and returned the supplemental notice of claim form they received from Quality Claims. They commenced this action on November 23, 2003 and answers were filed on behalf of the various defendants between January and March 2004. On June 12, 2004, defendant Smith filed his motion for partial summary judgment. Thereafter cross motions for partial summary judgment were filed by the Old Bridge defendants and by defendant Nielson. Plaintiffs' opposition to all the motions was filed on July 15, and on July 23, 2004, oral argument was heard.
The motion judge granted defendants' motions for partial summary judgment, stating her reasons on the record. The court ruled that plaintiffs' failure to serve specific notice of tort claims on dispatchers Nielson and Smith and their failure to include their names in the notice were fatal:
New Jersey Statute 59:8-3 tort claims specifically was amended 1994 to mandate that the notice of tort claims be served on public employees as well as public employers thereby effectively overruling prior case law stating that the Tort Claims Act notice provisions did not apply to public employees as enunciated in Morgan v. Union County Board of Chosen Freeholders (phonetic), 268 N.J.Super. 327 [337, 633 A.2d 985 (App.Div.1993)].
There is no reason why the plaintiff did not serve a timely notice of claim on defendants Smith and Nielson. Prior to serving the notice of tort claim on the other defendants the Old Bridge defendants provided plaintiff with pre-litigation discovery on May 15th and May 30 of this year, which gave the plaintiff the names of the 911 dispatchers. Plaintiff then served their notice of tort claim in June of 200[2] without noticing Smith and Nielson even though the plaintiff possessed their names.
The judge also found plaintiffs' failure to respond to the Old Bridge tort claims questionnaire was fatal to their action against the public entity.
On appeal plaintiffs argue that their failure to name Smith and Nielson, specifically, in the notice of tort claim should not have resulted in partial summary judgment for defendants, that such failure was merely a technicality and that defendants were not prejudiced thereby. They point out that defendants do not even allege any prejudice. Alternatively, plaintiffs argue that their notice of tort claim identified the "dispatcher" personnel, and they had thereby substantially complied with the provisions of the Tort Claims Act. *1222 They also argue that principles of equitable estoppel should apply.
Defendants counter that certain of the cases cited by plaintiffs for their contention that public employers need not be named and served were decided before the 1994 amendments of the Act. They contend the amendments specifically require the naming of individual public employees and that the completion of the public entity's specialized form is mandatory. The motion judge obviously agreed. Under the circumstances of this case, we do not.
In an opinion recently authored for the Court by Justice Wallace in Velez v. City of Jersey City, 180 N.J. 284, 850 A.2d 1238 (2004), our Court decided that the Tort Claims Act statutory definition of "injury" was so expansive as to include injuries resulting from intentional torts as well as negligence. Id. at 293-94, 850 A.2d 1238. Consequently, the Court determined that the Act's notice requirements encompass injuries arising from intentional conduct, as well as negligent conduct, and it noted that "[u]nder N.J.S.A. 59:3-14, a public employee is not immune if he or she engaged in conduct that `constituted a crime, actual fraud, actual malice or willful misconduct.'" Id. at 294, 850 A.2d 1238. The Court continued, observing that the exception from immunity must be read together with the overall mandate of N.J.S.A. 59:8-3, which states that "No action shall be brought against a public entity or public employee under this [A]ct unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter [of the Act]." With regard to whether written notice must therefore be given to the public employee as well as to the public entity, an argument made by defendants in this case, the Court said:
Finally, we reject the State's invitation to extend the Act's notice requirements to mandate that written notice also be given to public employees. Although we note that the better practice is for a potential plaintiff to give notice to both the public entity and the public employee, N.J.S.A. 59:8-8 only requires that notice be given to the public entity. If the Legislature had intended to require that written notice be given to a public employee in the same manner as a public entity, it would have expressly done so when it amended N.J.S.A. 59:8-8. Again, it did not. Accordingly, the State's argument is better addressed to the Legislature.
[Velez v. City of Jersey City, supra, 180 N.J. at 296, 850 A.2d 1238.]
Plainly, plaintiffs' complaint should not have been dismissed for failure to serve the notice of claim upon defendants Smith and Nielson.
Nor should the complaint have been dismissed for plaintiffs' failure to have included the names of the dispatchers, as opposed to their descriptive job designations. We, of course, recognize that N.J.S.A. 59:8-4(e) directs that "[a] claim ... shall include ... the name or names of the public entity, employee or employers causing the injury, damage or less, if known" (emphasis added), and that Smith's and Nielson's names were disclosed in the materials furnished under the consent order. Still, we cannot accept that it was the intention of the Legislature that a claimant be barred from suit for such a slight omission when the identity of the employee or employees was nearly as clear from the designation or description provided as it would have been by the inclusion of his or her name. Cf., Casinelli v. Manglapus, 181 N.J. 354, 355-56, 858 A.2d 1113 (2004) (holding "that the physician certification is neither a fundamental element of the AICRA [New Jersey Automobile Insurance Cost Reduction Act, N.J.S.A. 39:6A-1 to -34] *1223 cause of action nor analogous to a pleading and therefore, that neither dismissal with nor without prejudice is compelled.")
The goals underlying the notice of claim provisions of the Tort Claims Act are:
(1) "to allow the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to the bringing of suit"; (2) "to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and prepare a defense"; (3) "to afford the public entity a chance to correct the conditions or practices which gave rise to the claim"; and (4) "to inform the [public entity] in advance as to the indebtedness or liability that it may be expected to meet."
[Beauchamp v. Amedio, 164 N.J. 111, 121-22, 751 A.2d 1047 (2000) (citations omitted).]
In keeping with these goals, N.J.S.A. 59:8-4 is "designed to provide the public entity with sufficient information to enable it promptly to evaluate its liability and potential exposure and, if it chooses, to correct a defective condition and also to engage in settlement negotiations prior to the commencement of suit." Newberry v. Township of Pemberton, 319 N.J.Super. 671, 675, 726 A.2d 321 (App.Div.1999). It is to that end that N.J.S.A. 59:8-4 itemizes the information to be included in the notice of claim.
Defendants emphasize that, by virtue of the materials they provided in response to plaintiffs' order to show cause, plaintiffs knew the names of the dispatchers and they were obligated by N.J.S.A. 59:8-4(e) to state those names in their June 14, 2003 notice rather than to attempt to shift to defendants the burden of identifying the particular employees. We do not embrace such a proposition because a court should avoid a literal interpretation of individual statutory terms or provisions that would be inconsistent with the overall purpose of the statute. See, e.g., Young v. Schering Corp., 141 N.J. 16, 25, 660 A.2d 1153 (1995) (rejecting a literal reading of the waiver provision of the "whistleblower statute," Conscientious Employee Protection Act, N.J.S.A. 34:19-8, where the Court was "thoroughly convinced the Legislature did not intend to penalize former employees by forcing them to choose between a CEPA claim and other legitimate claims that are substantially, if not totally, independent of the retaliatory discharge claim"). "[S]tatutes are to be read sensibly, the purpose and reason for the legislation controlling, rather than construed literally." Suter v. San Angelo Foundry & Machine Company, 81 N.J. 150, 160-61, 406 A.2d 140 (1979) (concluding that the Legislature's use of the phrase "in an action ... for negligence" in the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, contemplated the concept of tortious fault and did not intend to exclude plaintiffs injured in strict liability situations from that Act). Similarly, we do not consider it fatal to a claimants' right to proceed that the claimants identified the public employees in a descriptive manner, rather than by reciting to the public entity the names disclosed in materials provided to them by that public entity pursuant to the court order. The description provided, together with the disclosed time and place of the occurrence, leave no room for mistake or confusion as to the identity of the involved employees.
Inasmuch as there was never any doubt that dispatchers Smith and Nielson were the employees referred to in the notice form, the public entity was given adequate notice to undertake its investigation and to assess plaintiffs' claim for purposes of administrative *1224 disposition. This simply is not a case where the use of a broad category of "dispatchers" had the capacity to create confusion or to mislead as to the identity of the particular public employees. Plaintiffs' failure to identify Smith and Nielson specifically by name is, as plaintiffs contend, essentially a technicality.
As to the failure to complete and return the supplemental form, plaintiffs claim that the doctrines of equitable estoppel or substantial compliance should apply. See, e.g., Murray v. Brown, 259 N.J.Super. 360, 613 A.2d 502 (Law Div.1991) (noting that the interests of justice and fairness require that the government entity promptly advise claimant of any deficiencies in the claim and that a failure to cure will result in a rejection of the claim by the public entity and the possible loss of right to maintain a civil action). Plaintiffs also argue that their failure to return defendants'"proper Notice of Claim Form" should not have resulted in the dismissal of their complaint on defendants' motion for summary judgment. They contend the material elicited by the supplemental claim form would not have revealed any new information regarding the claim and that no new "injuries" were going to be claimed since J.H. was dead. In addition, plaintiffs contend that they have substantially complied with the statutory obligation to submit a Notice of Claim and have since furnished the information requested in defendants' supplemental Notice of Claim Form through their answers to form interrogatories, wrongful death interrogatories, and various notices to produce.
Defendants contend this is in essence an attempt on plaintiffs' part to shift their burden to the public entity and it ignores cases such as Wood v. County of Burlington, 302 N.J.Super. 371, 695 A.2d 377 (App.Div.1997), which have required claimants to file the specialized forms adopted by public entities. Defendants further respond that post-complaint discovery under the rules governing civil procedure is no substitute for compliance with the pre-litigation notice provisions of the Tort Claims Act. They contend that once a public entity has adopted its personalized Notice of Claim Form pursuant to N.J.S.A. 59:8-6, it is incumbent upon a claimant to provide information requested in that form. They stress that plaintiffs never returned the supplemental form sent by the Old Bridge third party claims administrator and that plaintiffs' arguments of equitable estoppel and substantial compliance were properly rejected by the trial court.
Here, there is no evidence that the failure to return the form was a material omission or that Old Bridge was in any way prejudiced, either by plaintiffs' alleged failure to name the particular employees to whom their initial notice referred or by their failure to return the supplemental form. It was not until the motions for partial summary judgment were filed that the issue was even raised. "The notice provisions of the Tort Claims Act were not intended as `a trap for the unwary'". Lowe v. Zarghami, 158 N.J. 606, 629, 731 A.2d 14 (1999) (quoting Murray v. Brown, supra, 259 N.J.Super. at 365, 613 A.2d 502.)
First, we agree with defendants that discovery after a complaint is filed is not a substitute for the pre-litigation disclosures required under the Act, but that is not the critical issue. The critical issue is whether plaintiffs complied or substantially complied with the notice of claim requirement under N.J.S.A. 59:8-8 or whether they were excused from doing so. We hold they did. In this case, we find it unnecessary to resolve any disagreement between Wood v. County of Burlington, supra, 302 N.J.Super. at 378-80, 695 A.2d 377, which held that mere compliance with *1225 the disclosure requirements of N.J.S.A. 59:8-4 cannot save a notice of claim which does not also substantially comply with a specialized form adopted by a public entity pursuant to N.J.S.A. 59:8-6, and Newberry v. Township of Pemberton, supra, 319 N.J.Super. at 672-73, 726 A.2d 321, which held that a notice of claim must be deemed to have been timely filed within the ninety days prescribed by N.J.S.A. 59:8-8 if the claimant provides the public entity with notice substantially complying with N.J.S.A. 59:8-4, whether or not the public entity has adopted its own claim form pursuant to N.J.S.A. 59:8-6, provided that the completed adopted form is filed within a reasonable time thereafter.
We are satisfied that plaintiffs substantially complied with the notice provisions of the Act. The Supreme Court in discussing the doctrine of substantial compliance has stated the following:
The doctrine [of substantial compliance] is invoked so that technical defects will not defeat a valid claim. ("It is a doctrine based on justice and fairness, designed to avoid technical rejection of legitimate claims.") The doctrine requires the moving party to show: "(1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of petitioner's claim; and (5) a reasonable explanation why there was not strict compliance with the statute."
[Ferreira v. Rancocas Orthopedic Associates, 178 N.J. 144, 151, 836 A.2d 779 (2003) (internal citations omitted).]
Plaintiffs filed their claim form which complied with the requirements of N.J.S.A. 59:8-4 on June 14, 2002. That was within the prescribed ninety day time period. Thereafter, on June 21, 2002  two days beyond the statutory ninety day period  the third party claims administrator for Old Bridge forwarded Old Bridge's specialized claim form. Then, on July 31, 2002, the claims adjuster wrote to plaintiffs' counsel (a) advising that it had completed its investigation and (b) declaring that "the Township of Old Bridge is not responsible for your loss, and accordingly, we are hereby denying your claim for damages." In the meantime, on July 12, 2002, a different claims adjuster, who did not request that a specialized form be completed, advised plaintiffs that it was acting on behalf of the First Aid & Rescue Squad.
Under these circumstances, plaintiffs' failure to return the form is excusable and defendants are estopped from asserting plaintiffs' non-compliance.
"Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law." Casamasino v. City of Jersey City, 158 N.J. 333, 354, 730 A.2d 287, 298 (1999). The doctrine is designed to prevent injustice by not permitting a party to repudiate a course of action on which another party has relied to his detriment. Mattia v. Northern Ins. Co. of New York, 35 N.J.Super. 503, 510, 114 A.2d 582, 585 (App.Div.1955).
[Knorr v. Smeal, 178 N.J. 169, 178, 836 A.2d 794 (2003).]
The public entity advised that it had completed its investigation and had concluded, without consideration of the supplemental form or any additional information, that it was not responsible for plaintiffs' loss. At that juncture, plaintiffs could understandably assume the supplemental form was superfluous and that its submission would be a futile and vein gesture. In fact, the motion judge made the following observation:
When the plaintiff served the notice of claim complying with the statute, the *1226 Old Bridge defendants through its third-party claims adjustor, Quality Claims, served a request for supplemental information pursuant to the statute. Quality Claims stated that the Old Bridge defendants had no jurisdiction in the letter of July 31st over the First Aid Rescue Squad and denying the plaintiff's claim to closing the file. Presumably, Quality Claims, as an agent of Old Bridge, had enough information from the traditional notice of claim to reach an opinion as to the liability and close the  its file, and the Old Bridge defendants should be estopped from complaining that the supplemental information forms were not completed and filed within the 90 days. (emphasis added.)
The grant of summary judgment is inconsistent with that observation by the motion judge. The purpose of the provision is to "assure the fair and full disclosure of information necessary to the orderly and expedient administrative disposition of claims." Margolis and Novack, Claims Against Public Entities, comment to N.J.S.A. 59:8-6 (2004).
Based upon the record as a whole, it is not disputable that plaintiffs' notice of claim was submitted within ninety days of the occurrence and was timely. The information specified in N.J.S.A. 59:8-4 was provided and afforded an ample basis for the investigation and evaluation of the information, as contemplated by N.J.S.A. 59:8-8. To the extent there was any non-compliance, it was excused under the unique set of circumstances presented.
We reverse the orders of partial summary judgment and remand for further proceedings in the Law Division.
NOTES
[1] On December 16, 1991, Old Bridge Township adopted a resolution requiring any potential claimants to complete its approved notice of claim form.
[2] Since the incident occurred on March 21, 2002, the ninety (90) day period for filing the Notice of Claim would have expired on June 19, 2002, two days before the date of Ms. Kojaza's letter.