**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1996-24

RAMON A. PENN JIMENEZ, as
Administratrix ad Prosequendum
for the ESTATE OF MATILDE
JIMENEZ PENN,

 Plaintiff-Respondent,

v.

ROBERT WOOD JOHNSON
BARNABAS HEALTH,
JERSEY CITY MEDICAL
CENTER, JERSEY CITY
MEDICAL CENTER VASCULAR
CENTER, PA, SIMA SUHAS
PENDHARKAR, M.D.,
and MARIA J. GLODEK
SOLLECITO, R.N.,

 Defendants,

and

JOE T. HUANG, M.D., EVAN
KESSLER, M.D., and
ELIZABETH  GORMAN, M.D.,

 Defendants-Appellants.

Submitted January 8, 2026 – Decided February 2, 2026

Before Judges Mawla and Marczyk.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1548-24.

Buckley Theroux Kline & Cooley, LLC, attorneys for appellants (Tess J. Kline and Charles C. Loughery, on the briefs).

Christopher T. Howell, attorney for respondent.

PER CURIAM

Defendants Joe T. Huang, M.D., Evan Kessler, M.D., and Elizabeth Gorman, M.D. (defendant physicians) appeal from the trial court's January 17, 2025 order denying their motion to dismiss plaintiff Ramon A. Penn Jimenez's[1] complaint for failure to serve a timely notice of claim as required under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to :12-3.  We reverse.

I.

On April 27, 2022, decedent underwent surgery, performed by defendant physicians, at Jersey City Medical Center (JCMC).  During the procedure, a fire broke out near the operating table igniting the drapes covering decedent,

---

[1]  Plaintiff is named as the administratrix ad prosequendum for the estate of Matilde Jimenez Penn (decedent).

resulting in her sustaining burn injuries. Decedent subsequently died in May 2023, which plaintiff alleges was caused by defendant physicians' negligence.

On May 10, 2022, plaintiff's counsel served a notice of claim, pursuant to N.J.S.A. 59:8-7, on JCMC.[2] Plaintiff was not in possession of decedent's medical records from JCMC when he served the notice of claim. JCMC provided decedent's medical records to plaintiff on May 31, 2022.

Over the next two years, plaintiff's counsel communicated with JCMC and its third-party administrator, VCM, LLC, which did not disclose defendant physicians were employed by Rutgers. Counsel's efforts to obtain Dr. Huang's insurance information were also unsuccessful.

Plaintiff filed a complaint on April 23, 2024, alleging several causes of action, including medical malpractice. Dr. Kessler filed an answer on July 2, 2024, and Drs. Huang and Gorman answered on August 15, 2024. Dr. Kessler asserted the following affirmative defenses:

> [] Defendant was an employee of the State of New Jersey during the time period in question—specifically, [d]efendant was employed by Rutgers, The State University of New Jersey on April 27, 2022.
>
> [] Plaintiff has failed to comply with the notice requirements of the [TCA] (N.J.S.A. 59:1-1 to [:]12-3).

_____

[2] No notice was served on Rutgers or defendant physicians.

A-1996-24

> [] Plaintiff's claims are barred by the [TCA,] N.J.S.A. 59:1-1 to [:]12-3.

Drs. Huang and Gorman advanced the same defenses in their answer.

Moreover, on August 15, defense counsel forwarded correspondence to the court—and copied plaintiff's counsel—advising, "[d]efendants are insured through a program of self-insurance governed by the State of New Jersey [TCA]." The correspondence included a certification from the assistant director of healthcare risk and claims management at Rutgers "to clarify [d]efendants' employment status at the time of the negligence alleged" in this case. The assistant director certified, "[a]t the time of the negligence asserted in the [c]omplaint," defendant physicians were employed by "Rutgers New Jersey Medical School." The certification further noted Dr. Huang was an associate professor of surgery, and Drs. Kessler and Gorman were surgery fellows.

Defense counsel certified that on August 22, 2024, and again on September 10 and September 12, plaintiff's counsel spoke with defense counsel on the phone. The certifications assert plaintiff's counsel reached out because he saw defendants' answers indicating defendants were employed by Rutgers. Defense counsel further noted plaintiff's counsel was advised of defendants' employment with Rutgers. Plaintiff's counsel was also advised decedent's

4

medical records reflected Dr. Huang was affiliated with Rutgers, and defendants would not waive the TCA's notice requirements.

On November 14, 2024, defendant physicians moved to dismiss plaintiff's complaint for "failure to serve a [n]otice of [t]ort [c]laim pursuant to N.J.S.A. 59:8-8(a)." Plaintiff opposed the motion, arguing he "substantially complied" with the TCA's notice requirement. In the alternative, plaintiff asserted decedent's medical records did not clearly indicate defendant physicians were employees of Rutgers. He further contended defendants' answers were insufficient to put him on notice they were employed by Rutgers while operating on decedent in April 2022. Plaintiff also argued the court should grant permission to file a late tort claims notice. He maintained it was not until November 13, 2024, when Dr. Huang answered interrogatories, that it was clarified the capacity in which defendant physicians were employed while operating on decedent. Plaintiff did not serve a notice of claim on defense counsel until the day of oral argument—January 17, 2025.

On January 17, 2025, the motion judge issued an order denying defendant physicians' motion to dismiss, stating:

> Pursuant to Galik v. Clara Maass Medical Center, 167 N.J. 341, 353 (2001), the [c]ourt finds that [p]laintiff substantially complied with the New Jersey [TCA] notice [requirement] pursuant to N.J.S.A. 59:8-8.

5

Plaintiff served a [t]ort [c]laims [n]otice o[n] [JCMC] on May 13, 2022[,] at which point the doctors were on notice of the suit. A reasonable, timely[,] and statutorily compliant notice was sent to JCMC where [defendant] doctors Huang, Kessler, and Gorman were working as agents of the hospital but, unknown to plaintiff at the time, were employed through Rutgers. Plaintiff had no reason to suspect that her doctors were even associated with a public entity while treating at a private hospital. Plaintiff followed the procedures necessary to claim medical malpractice against [a] physician at JCMC in ordinary circumstances. At no time within the one-year notice of late claim statutory period did JCMC advise plaintiff of the [defendant] doctors['] correct employment status, despite their duty to do so.

[(Citation reformatted).]

II.

Defendant physicians argue on appeal the trial court erred in finding plaintiff substantially complied with the TCA's notice requirement. They assert the accrual date of plaintiff's claim was April 27, 2022, or alternatively, July 2 and August 14, 2024, when defendants' answers were filed, and plaintiff's failure to file a timely notice of claim warranted dismissal of the complaint with prejudice.

We review issues of law de novo and accord no deference to the trial judge's legal conclusions. Nicholas v. Mynster, 213 N.J. 463, 478 (2013). For mixed questions of law and fact, we give deference to the court's supported

factual findings, but review de novo the court's application of any legal rules to such factual findings. State v. Pierre, 223 N.J. 560, 577 (2015). "[Q]uestions of fact as to when a cause of action is deemed to accrue for purposes of applying a statute of limitations are ordinarily resolved by a judge . . . ." Berlen v. Consol. Rail Corp., 291 N.J. Super. 542, 555 (App. Div. 1996) (citing Lopez v. Swyer, 62 N.J. 267, 272 (1973)). As we have explained, "[w]hether a cause of action is barred by a statute of limitations is a question of law, also reviewed de novo." Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016) (citing Est. of Hainthaler v. Zurich Com. Ins., 387 N.J. Super. 318, 325 (App. Div. 2006)); see also Save Camden Pub. Schs. v. Camden City Bd. of Educ., 454 N.J. Super. 478, 487-88 (App. Div. 2018). Moreover, "we review de novo . . . whether the doctrine of substantial compliance applies to preserve [a plaintiff's] claim[]." H.C. Equities, LP v. Cnty. of Union, 247 N.J. 366, 381 (2021).

Defendant physicians assert the trial court erred in finding plaintiff substantially complied with the requirements of the TCA because plaintiff had "actual knowledge of [defendants'] status as . . . public . . . employees" prior to or on August 15, 2024. They also contend plaintiff had the ability "to determine [defendants'] public employee status through a bare modicum of diligence when [decedent's] medical records were received [by plaintiff] on May 31, 2022."

A-1996-24

Furthermore, defendants insist "the trial court ignored every event that occurred after the [c]omplaint was filed, any of which, individually, would have been sufficient to unequivocally place [p]laintiff on notice of the need to serve a [TCA] notice." They maintain "[t]he mere filing of a [c]omplaint does not constitute substantial compliance with Title 59 notice requirements," and "failure by a plaintiff to serve a [n]otice of [c]laim within ninety days of accrual ordinarily results in that plaintiff being 'forever barred' from bringing a particular action against a public entity." See Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 171-72 (App. Div. 1986).

Defendant physicians maintain any alleged wrongful act took place on April 27, 2022, the date of the fire in the operating room, and thus, "[t]he ninety-day period for [p]laintiff's [n]otice of [c]laim ran [out] on July 26, 2022." Additionally, they assert, "[e]ven assuming that [p]laintiff would be afforded permission to file a [l]ate [n]otice based on a sufficient showing of good cause and extraordinary circumstances, [p]laintiff would still be required to file a [l]ate [n]otice within one year of the accrual date," which would have been April 27, 2023.

Alternatively, defendant physicians contend that even if the court finds plaintiff was not on notice of defendants' status as public employees until July

A-1996-24

2, 2024, when Dr. Kessler answered the complaint, or August 15, 2024, when Drs. Huang and Gorman served their answers, plaintiff was still required to provide a notice of claim to defendants by September 30, 2024 and November 13, 2024, respectively. However, plaintiff's notice of claim was not filed until January 17, 2025.

Defendant physicians acknowledge, under traditional equitable principles, "the ninety-day period within which the injured party must file a notice of claim against a public entity is . . . delayed until the injured party learns of the injury or of the third party's responsibility for that injury." Ben Elazar v. Macrietta Cleaners, Inc., 230 N.J. 123, 135 (2017); see also McDade v. Siazon, 208 N.J. 463, 475 (2011). They also concede when a claimant is injured by a third party and does not know or has no reason to know a public entity is responsible for that injury, "the discovery rule applies to toll the accrual date for triggering the notice-of-claim requirement." Ben Elazar, 230 N.J. at 140.

Defendant physicians assert plaintiff had "actual notice" of their employment status as public employees "from the very outset of this case," as their employment with Rutgers was "clearly set forth in the medical records at issue." At the latest, plaintiff had notice when defendants' answers to plaintiff's complaint were served in July and August 2024. Moreover, they contend

plaintiff failed to seek leave to file a late notice of claim as permitted by N.J.S.A. 59:8-9.

"The New Jersey [TCA], N.J.S.A. 59:1-1 to :12-3, is the statutory mechanism through which our Legislature effected a waiver of sovereign immunity." D.D. v. Univ. of Med. & Dentistry of N.J., 213 N.J. 130, 133 (2013). "The guiding principle of the [TCA] is that 'immunity from tort liability is the general rule and liability is the exception . . . .'" Coyne v. State, Dep't of Transp., 182 N.J. 481, 488 (2005) (quoting Garrison v. Twp. of Middletown, 154 N.J. 282, 286 (1998)). "Among the most important limitations that the Act imposes on would-be claimants are . . . the statutory provisions that govern a claimant's obligation to file a notice of tort claim as a prerequisite to initiating litigation." D.D., 213 N.J. at 134.

Under N.J.S.A. 59:8-8,

> [a] claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the [ninetie]th day after accrual of the cause of action. . . . The claimant shall be forever barred from recovering against a public entity or public employee if:
>
> > a. The claimant failed to file the claim with the public entity within [ninety] days of accrual of the claim except as otherwise provided in N.J.S.A. 59:8-9 . . . .

10

N.J.S.A. 59:8-9, in pertinent part, provides:

> A claimant who fails to file [a] notice of [their] claim within [ninety] days . . . may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of [their] claim provided that the public entity or the public employee has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for [their] failure to file notice of claim within the period of time prescribed by section 59:8-8 . . . .

"Ascertaining the timeliness of a [TCA] notice requires a . . . three-step sequential analysis . . . ." McNellis-Wallace v. Hoffman, 464 N.J. Super. 409, 416 (App. Div. 2020) (citing Beauchamp v. Amedio, 164 N.J. 111, 118 (2000)). "The first step is to determine when the cause of action accrued in accordance with N.J.S.A. 59:8-1." Ibid. "Once the date of accrual is ascertained, one can proceed to the second step, which 'is to determine whether a notice of claim was filed within ninety days' as required by N.J.S.A. 59:8-8." Ibid. (quoting Beauchamp, 164 N.J. at 118). "'If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice' under N.J.S.A. 59:8-9." Ibid. (quoting Beauchamp, 164 N.J. at 118-19). In addition to extraordinary circumstances, there must also be a showing that the public entity is not

"substantially prejudiced" by the late notice. McDade, 208 N.J. at 477 (quoting N.J.S.A. 59:8-9).

Our focus here relates to the first step—when the cause of action accrued in accordance with N.J.S.A. 59:8-1. "The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual." McNellis-Wallace, 464 N.J. Super. at 416. In general, the discovery rule tolls the accrual of a cause of action if the plaintiff "reasonably is unaware either that [they] ha[ve] been injured, or that the injury is due to the fault or neglect of an identifiable individual or entity." Caravaggio v. D'Agostini, 166 N.J. 237, 245 (2001) (quoting Abboud v. Viscomi, 111 N.J. 56, 62 (1988)). Our Supreme Court has also determined a sub-category of "knowledge of fault" cases exist "in which a plaintiff knows [they] ha[ve] been injured and knows the injury was the fault of another, but does not know that an additional party was also responsible for [their] plight." Ben Elazar, 230 N.J. at 139. In other words, "[w]hen a plaintiff is injured by a third party and has no reason to believe that another party, specifically a public entity, is responsible for the injury, then the discovery rule applies to toll the accrual date for triggering the notice-of-claim requirement." Id. at 140.

A-1996-24

Plaintiff relies on Eagan v. Boyarsky, 158 N.J. 632 (1999), and Lowe v. Zarghami, 158 N.J. 606 (1999), for the proposition that defendant physicians are barred from invoking the protection of the TCA because decedent was not properly advised of their employment status during her treatment. To avoid confusion concerning physicians' status as public employees, the Court issued the following directive in both Lowe and Eagan:

> [Public medical schools] must require clinical professors employed by them to advise their patients, both orally and in writing, that they are employees of [public medical schools]. Such notice should be given to a patient as soon as practicable. It also would be helpful if clinical professors wore badges identifying themselves as [public medical school] employees. Those steps, if taken together with this holding that clinical professors are [public medical school] employees, should make patients aware that their physicians are public employees entitled to notice under the TCA.
>
> [Eagan, 158 N.J. at 643; see also Lowe, 158 N.J. at 631.]

Although there is a notation in the records Dr. Huang was a professor of medicine at Rutgers, there is no indication he advised decedent "both orally and in writing" of his employment status. Similarly, there is insufficient evidence in the record to have put decedent on notice of the employment status of Drs. Kessler and Gorman. Dr. Huang's consultation note references "NJMS Vascular

13

Surgery Consultation" but nothing more. These notations in the medical records were insufficient to have placed decedent on notice of defendant physicians' employment status. Moreover, after JCMC was served with a notice of claim, it did not advise plaintiff's counsel defendant physicians were employed by Rutgers.

Accordingly, plaintiff did not know defendants' public employment status prior to filing his complaint and therefore, was not required at that juncture to serve Rutgers or defendant physicians with a notice of claim. However, that does not end our inquiry. We must next address whether plaintiff was subsequently placed on notice regarding defendant physicians' employment status after plaintiff filed his complaint and whether the trial court properly determined plaintiff substantially complied with the notice provisions of the TCA.

To prevent technical defects from barring legitimate claims, courts have applied the equitable doctrine of "substantial compliance." See D.D., 213 N.J. at 159-60; Lebron v. Sanchez, 407 N.J. Super. 204, 214-15 (App. Div. 2009). "[S]ubstantial compliance means that the notice has been given in a way, which though technically defective, substantially satisfies the purposes for which notices of claims are required." Lebron, 407 N.J. Super. at 216 (quoting Lameiro

v. W. N.Y. Bd. of Educ., 136 N.J. Super. 585, 588 (Law Div. 1975)). Substantial compliance is an equitable doctrine used "to avoid the harsh consequences that flow from technically inadequate actions that nonetheless meet a statute's underlying purpose." Galik, 167 N.J. at 352. Parties seeking to apply the substantial-compliance doctrine must demonstrate they took "a series of steps . . . to comply with the statute involved," id. at 353 (quoting Bernstein v. Bd. of Trs. of the Tchrs.' Pension & Annuity Fund, 151 N.J. Super. 71, 76-77 (App. Div. 1977)), and "those steps achieved the statute's purpose, as for example, providing notice," Cnty. of Hudson v. State, Dep't of Corr., 208 N.J. 1, 22 (2011). Substantial compliance applies only if the other party is not prejudiced and there is "a reasonable explanation why there was not a strict compliance with the statute." Galik, 167 N.J. at 353; see also Bernstein, 151 N.J. Super. at 77.

Application of the substantial-compliance doctrine in the tort-claims context "has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." D.D., 213 N.J. at 159; see, e.g., Lebron, 407 N.J. Super. at 217-19 (holding notice that did not expressly assert a negligent-supervision theory of liability

15

nevertheless substantially complied with the notice requirement of the TCA given that it identified the plaintiff and her attorney, described and identified the date of the incident, listed the injuries of the plaintiff, and demanded damages); Henderson v. Herman, 373 N.J. Super. 625, 633 (App. Div. 2004) (finding notice of claim against police dispatch and emergency transport personnel substantially complied even though the plaintiff failed to include names of specific dispatchers).

Here, plaintiff's claims arise from the alleged negligence of defendant physicians who were employed by Rutgers, which was never served with a notice of claim. Although plaintiff could be excused for not initially filing a notice of claim on Rutgers because he was not on notice of defendant physicians' employment status, plaintiff was put on notice after defendant physicians answered his complaint, thereby triggering the statutory ninety-day notice period. However, plaintiff failed to file a notice of claim during this period and did not move to file a late notice. Despite being on notice since, at the latest, August 2024, plaintiff took no steps to ensure the correct entity, Rutgers, was served with a notice of claim, even though at that point, he knew of defendant physicians' affiliation with Rutgers. Plaintiff also failed to remedy the improper service upon JCMC, which is not a public agency.

A-1996-24

Even accepting the identity of defendant physicians' employer was unclear from the medical records, that issue was clarified upon the filing of defendants' answers, coupled with the certification from Rutgers' assistant director of healthcare risk and claims management. Nevertheless, plaintiff failed to take appropriate action at that juncture to serve a notice of claim on Rutgers. Plaintiff also provides no reasonable explanation as to why he did not move to file a late notice of claim upon learning of defendant physicians' employment status.

Relying on Lowe, plaintiff contends because defendant physicians did not initially advise decedent about their employment status, they are now precluded from relying on the TCA's notice defense. Lowe involved the applicability of the TCA and its notice requirement for a doctor employed by the University of Medicine and Dentistry of New Jersey (UMDNJ), a public entity, who treated the plaintiff at a private hospital. 158 N.J. at 610. In reviewing the record, the Court found "no evidence supporting the conclusion that [the plaintiff] knew [the defendant doctor] was a UMDNJ employee." Id. at 629-30. The "unanticipated revelation" that the doctor was a public employee was sufficient to support a finding of extraordinary circumstances. Id. at 630.

However, in Lowe, the doctor's motion to dismiss provided the plaintiff with her first knowledge of the doctor's employment status. See id. at 613. Here,

A-1996-24

however, notice was provided in defendants' answers and the certification of Rutgers' assistant director of claims management. We deem this distinction important because, as one commentator has observed:

> The 1994 amendment of [N.J.S.A. 59:8-9] established the requirement that a late notice of claim be filed within a reasonable time. This makes clear that having sufficient reasons for not filing within the [ninety]-day period of [N.J.S.A.] 59:8-8 does not create an absolute right to wait until the end of the one[-]year period to seek leave to file a late notice. Rather, leave to file must be sought within a reasonable time after the abatement of whatever conditions created sufficient reasons for late filing in the first place. See, e.g., Wood v. Cnty. of Burlington, 302 N.J. Super. 371, 380 (App. Div. 1997) (unexplained nine-month delay in filing motion for leave to file late notice contributed to denial of motion, brought at the end of the one-year period, for leave to file a late notice).
>
> [Margolis & Novack, Title 59: Claims Against Public Entities, cmt. on N.J.S.A. 59:8-9, at 277 (2025) (citations reformatted).]

Because plaintiff had actual knowledge of defendant physicians' employment status upon the filing of their answers, he was obligated at that time to move to file a late notice. However, he took no action until he responded to defendants' motion to dismiss. Plaintiff failed to offer any explanation for the delay other than to contend at oral argument that serving a notice of claim earlier would "undermine" his substantial compliance argument. We are unpersuaded

by this argument. Unlike in <u>Lowe</u>, the interim period here, before defendants sought dismissal, afforded plaintiff an opportunity to remedy the prior defective notice served on JCMC.

Defendant physicians asserted in their answers plaintiff failed to comply with the TCA's notice provisions. Once plaintiff was provided with defendants' answers, or the certification of the assistant director of healthcare risk and claims management, he was vested with notice of defendants' employment status. At that juncture, he could not idly sit by and rely on the original notice of claim that was served on a private hospital. Plaintiff originally recognized the need to file a notice of claim but never took steps to serve the proper entity, even after being provided with sufficient information regarding defendants' employment status. Therefore, plaintiff failed to demonstrate he generally complied with the purpose of the statute or that he took a series of steps to comply with the TCA when he was clearly advised of defendants' employment status. Accordingly, we conclude the trial court erred in finding plaintiff substantially complied with the TCA.

For these reasons, we reverse and remand with the direction the trial court enter an order dismissing defendant physicians with prejudice. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

19

A-1996-24