**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3655-19

HOWARD GARTENBERG,

    Plaintiff-Appellant,

v.

CITY OF HACKENSACK,
CITY OF HACKENSACK
DEPARTMENT OF PUBLIC
WORKS SHADE TREE
ADVISORY COMMITTEE,
MARY PERRONE,
SALVATORE PERRONE,
ANGELA HENRICKS, and
BRIAN HENRICKS,

    Defendants-Respondents.

_____

Argued September 27, 2021 – Decided October 25, 2021

Before Judges Rothstadt and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-1915-20.

Antonio S. Grillo argued the cause for appellant (Jacoby & Meyers, LLP, attorneys; Frances M. Bova, on the briefs).

Bradley D. Tishman argued the cause for respondents City of Hackensack and City of Hackensack Department of Public Works Shade Tree Advisory Committee (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Bradley D. Tishman, of counsel and on the brief).

PER CURIAM

Plaintiff Howard Gartenberg challenges a May 8, 2020 Law Division order denying his motion to file a late notice of claim against defendants, City of Hackensack and Hackensack Department of Public Works Shade Tree Advisory Committee, under the New Jersey Tort Claims Act (TCA), N.J.S.A. 59:1-1 to 12-3. We affirm.

I.

In evaluating the issues raised on appeal, we have assumed all facts alleged by plaintiff to be true and have given him the benefit of all inferences from the motion record. Feinberg v. N.J. Dep't of Env't Prot., 137 N.J. 126, 129 (1994).

On July 22, 2019, plaintiff fell and injured himself while walking on a sidewalk in Hackensack. He was transported by ambulance to a hospital for treatment after he reported "trouble lifting his left knee due to his sciatic nerve"

and pain in his right shoulder and elbow. Upon discharge, he was admitted to an inpatient rehabilitation facility for continued medical care.

On September 25, 2019, plaintiff filed notices of claim with the municipal defendants alleging those entities were "negligent, wanton, reckless and careless in allowing, causing and/or permitting the aforesaid sidewalk to be, become and/or remain in a dilapidated condition and in a state of disrepair causing dangerous, hazardous and unsafe conditions." The notices, along with all included authorizations, were executed by plaintiff's then-counsel and indicated plaintiff sustained "serious" and "permanent" injuries including a "right, upper extremity fracture" caused by his trip and fall on a raised sidewalk adjacent to 6 Spring Valley Road.

Plaintiff also stated he sought $3 million in personal injury damages and provided the names of certain of his health care providers. Under the notices' medical reports and records authorization section, plaintiff specifically limited the release of his medical records only to Bergen Risk Managers, the municipal defendants' insurer. Plaintiff's counsel did not complete the authorization for plaintiff's employment records.

The following day, on September 26, 2019, the City of Hackensack sent a letter to plaintiff's counsel indicating it received plaintiff's notices but that his

claims would not be considered filed until he returned a completed "official form" the city adopted, which it attached. The City of Hackensack's specialized form asked for more detailed information than that provided on September 25, 2019, such as a more precise calculation of damages, an expansive medical release authorization, and confirmation that plaintiff had not previously sued defendants.

Instructions accompanying the specialized form stated in bold, underlined lettering that authorization "for release of hospital, medical, insurance and pharmacy records must be completed," and that failure to do so would "result in the claim being treated as not being properly filed." The form authorized the released of medical information not only to Bergen Risk Managers, but also to Hackensack and all of its agents.

Plaintiff failed to complete the specialized form over the ensuing six months and instead, on March 19, 2020, moved to file a late notice of claim. In support, plaintiff's attorney Ryan Martinez, who despite attesting at oral argument that he did not commence employment at the law firm representing plaintiff until January 2020, submitted a certification stating plaintiff received "a complex fracture of the right elbow which required three . . . surgeries with insertion of hardware." Martinez further certified that plaintiff retained his

4

office on August 5, 2019, while plaintiff was still in the hospital, and that at the time plaintiff only indicated he fell "in the vicinity of his chiropractors' office."

Martinez also indicated plaintiff informed an unidentified individual in his office on September 6, 2019 that he would be unable to leave the rehabilitation facility and confirm the location of his fall for another six weeks. Martinez stated his office communicated with the Hackensack Police Department on September 19, 2019, which reported plaintiff fell at 6 Spring Valley Road. That address was also contained in the Department's investigation report which plaintiff's counsel received five days later.

Plaintiff met with his counsel in late December 2019 to confirm the location of the incident and take photographs of the sidewalk. Martinez stated that once his office reviewed the photos, counsel "realized that the area of the fall was in front of 20 Spring Valley Road, not 6 Spring Valley Road."

Martinez also certified that the purpose of the motion was "simply [to] correct[]the address of the incident." Notably, plaintiff appended a copy of amended notices with the 20 Spring Valley Road address, using the forms that Hackensack previously indicated in their September 26, 2019 letter were insufficient.

A-3655-19

It was not until May 4, 2020, that plaintiff filed notices of claim using the specialized forms. The May 4, 2020 notices included additional information regarding plaintiff's damages claim, provided an operative report from his surgeon dated July 26, 2019, and a post-operative wellness report dated September 10, 2019. Plaintiff also explained that his $3 million demand included claims for pain and suffering, anxiety, stress, mental anguish, and past and present medical expenses, and informed the municipal defendants, contrary to his September 2019 notice, that certain of his medical costs were covered by his insurance and provided the applicable policy number. He also provided photographs of the incident site and responded that he had not previously filed a claim against the municipal defendants.

The court denied plaintiff's motion in a May 8, 2020 order. In the judge's corresponding oral statement of reasons, he found "nothing [was] hidden by Hackensack" and plaintiff failed to use the correct claim form despite having a "full month" before the ninety-day deadline to file such notice. The judge also found no evidence that plaintiff was incapacitated because the last medical record he submitted related to treatment on or about September 10, 2019, and plaintiff did not provide any certification "detailing what the issues were medically for him during that time period in question."

6

The judge also noted plaintiff did not suffer a neurological injury and the record contained no competent proofs to indicate that plaintiff could not communicate with his attorneys while hospitalized or in rehabilitation. Nor did plaintiff indicate why his attorneys could not meet with him at the rehabilitation facility.

Without a competent certification from plaintiff, the judge, relying on Wood v. County of Burlington, 302 N.J. Super. 371 (App. Div. 1997), and Newberry v. Township of Pemberton, 319 N.J. Super. 671 (App. Div. 1999), denied plaintiff's application and concluded plaintiff failed to establish extraordinary circumstances warranting the filing of a late notice of claim. He noted that even if he accepted counsel's certification, the only personal knowledge Martinez could properly attest to would be that based on his employment with the law firm after January 2020. The judge determined there was "nothing [in the record] to account for the time period from early September through January of 2020" that would explain why plaintiff could not communicate with Martinez's office.

This appeal followed in which plaintiff asserts that the judge erred in denying his application because he substantially complied with the TCA's notice requirements. Alternatively, he argues that the judge committed error in

7

denying him permission to file a late notice of claim because the judge incorrectly concluded that he did not establish extraordinary circumstances and failed to consider that defendants would not be prejudiced by a late filing.

## II.

The decision to grant permission to file a late TCA notice is left "to the sound discretion of the trial court, and [its decision] will be sustained on appeal in the absence of a showing of an abuse thereof." D.D. v. Univ. of Med. & Dentistry of New Jersey, 213 N.J. 130, 147 (2013) (alteration in original) (quoting Lamb v. Glob. Landfill Reclaiming, 111 N.J. 134, 146 (1988)); see also N.J.S.A. 59:8–9. An abuse of discretion "arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (internal quotation marks omitted).

Further, we generally examine "more carefully cases in which permission to file a late claim has been denied than those in which it has been granted, 'to the end that wherever possible cases may be heard on their merits.'" Feinberg, 137 N.J. at 134 (quoting S.E.W. Friel Co. v. N.J. Tpk. Auth., 73 N.J. 107, 122 (1977)). Therefore, "any doubts which may exist should be resolved in favor of the application." Lowe v. Zarghami, 158 N.J. 606, 629 (1999) (quoting

8

Feinberg, 137 N.J. at 134).  In determining whether to deny permission to file a late notice, the court must consider all of the circumstances in combination. Ibid.

### III.

As noted, plaintiff initially contends that the judge erred in denying his application because he "substantially compl[ied]" with the TCA's notice requirements.  In support, he relies on an unpublished federal case and Lebron v. Sanchez, 407 N.J. Super. 204 (App. Div. 2009), Henderson v. Herman, 373 N.J. Super. 625 (App. Div. 2004), Murray v. Brown, 259 N.J. Super. 360 (Law Div. 1991), Dambro v. Union County Park Commission, 130 N.J. Super. 450 (Law Div. 1974), and Ewing v. Cumberland County, 152 F. Supp. 3d 269 (D.N.J. 2015).  Plaintiff also distinguishes Newberry, 319 N.J. Super. 671, and Wood, 302 N.J. Super. 371, arguing that, unlike those cases, he "provided all material information."  We have considered and disagree with all of these arguments.

Claims against a public entity for damages are governed by the TCA which defines the extent of the Legislature's waiver of sovereign immunity and "establishes the procedures by which claims may be brought."  Beauchamp v. Amedio, 164 N.J. 111, 116 (2000).  Pursuant to the TCA, any plaintiff bringing a tort suit against a public entity must file a pre-suit notification of the claim in

writing within ninety days of the accrual of the action or else be forever barred from asserting that cause of action. Guzman v. City of Perth Amboy, 214 N.J. Super. 167, 171 (App. Div. 1986). "The rationale underlying the notice requirement of the [TCA] is to expedite investigation with the hope of reaching a nonjudicial settlement and to allow the public entity prompt access to information about the claim so that it may prepare a defense." Wood, 302 N.J. Super. at 375 (quoting Pilonero v. Twp. of Old Bridge, 236 N.J. Super. 529, 533 (App. Div. 1989)).

The TCA "imposes strict requirements upon litigants seeking to file claims against public entities." McDade v. Siazon, 208 N.J. 463, 468 (2011). Among those requirements is that the claimant, prior to initiating suit, file a notice of claim describing:

> a. The name and post office address of the claimant; b. The post-office address to which the person presenting the claim desires notices to be sent; c. The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted; d. A general description of the injury, damage or loss incurred so far as it may be known at the time of presentation of the claim; e. The name or names of the public entity, employee or employees causing the injury, damage or loss, if known; and f. The amount claimed as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at

the time of the presentation of the claim, together with the basis of computation of the amount claimed.

[N.J.S.A. 59:8-4.]

The statute also permits a public entity to request additional information through a specialized claim form. See N.J.S.A. 59:8-6. "[A] plain reading of N.J.S.A. 59:8-6 shows that the additional information which a public entity is permitted to demand in its notice of claim form is not limited to the categories of information listed in that section." Wood, 302 N.J. Super. at 377. The public entity retains "authority to decide for [itself] what information must be provided by claimants." Ibid. This interpretation is consistent with the purpose of "assur[ing] the fair and full disclosure of information necessary to the orderly and expedient administrative disposition of claims." Id. at 378 (alteration in original) (quoting Comment on N.J.S.A. 59:8-6).

"Once a public entity adopts a personalized notice of claim form pursuant to N.J.S.A. 59:8-6, which requires information that is more detailed than is otherwise required, it is incumbent upon a claimant to provide the information requested in the form." Ibid. (quoting Navarro v. Rodriguez, 202 N.J. Super. 520, 529 (Law Div. 1984)). "Mere compliance with N.J.S.A. 59:8-4 cannot save a notice of claim which does not also substantially comply with N.J.S.A. 59:8-6." Ibid. Plaintiffs are "under a statutory duty to obtain and provide" the

11

information required by the township's specialized claim form, and "failure to do so plainly violate[s] the letter and spirit of N.J.S.A. 59:8-6." Ibid. N.J.S.A. 59:8-6 does not require a claimant to provide the supplemental information within ninety days of the accrual of the claim; instead, this information must be submitted within a reasonable time after receiving the form. Henderson, 373 N.J. Super. at 637.

The notice requirements, however, are "not intended as 'a trap for the unwary.'" Lebron, 407 N.J. Super. at 215 (quoting Lowe, 158 N.J. at 629). The Supreme Court has recognized the notice requirements are "more properly denominated as a notice of injury or loss." Beauchamp, 164 N.J. at 121. Therefore, "substantial rather than strict compliance with the notice requirements of the Act may satisfactorily meet the statute's mandates." Lebron, 407 N.J. Super. at 215.

In the context of the TCA, the substantial compliance doctrine "has been limited carefully to those situations in which the notice, although both timely and in writing, had technical deficiencies that did not deprive the public entity of the effective notice contemplated by the statute." D.D., 213 N.J. at 159. To warrant application of the doctrine, the moving party must show:

> (1) the lack of prejudice to the defending party; (2) a series of steps taken to comply with the statute

involved; (3) a general compliance with the purpose of the statute; (4) a reasonable notice of [a plaintiff's] claim; and (5) a reasonable explanation why there was not strict compliance with the statute.

[Ferreira v. Rancocas Orthopedic Assocs., 178 N.J. 144, 151 (2003) (quoting Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 353 (2001)).]

Here, plaintiff's claim accrued on July 22, 2019, and he had until October 20, 2019, to comply with the TCA's ninety-day notice requirement. Even if we accept that plaintiff's initial September 25, 2019 notice substantially complied with N.J.S.A. 59:8-4, notwithstanding the lack of competent evidence regarding the basis for listing an incorrect incident address,[1] the notices failed to comport with the specialized form adopted by the City of Hackensack, which it is statutorily entitled to require plaintiff to complete under N.J.S.A. 59:8-6.

The City of Hackensack immediately notified plaintiff of the deficiency, and plaintiff did not provide defendants the completed specialized form until May 4, 2020, approximately seven months later. Failing to provide the specified

---

[1]  On this point, we note that plaintiff's reliance on the Department's investigation report as supportive of his argument that counsel took "a series of steps taken to comply with the statute" and provided "a reasonable explanation why there was not strict compliance", Ferreira, 178 N.J. at 151, is based entirely, like those facts supporting the extraordinary circumstances issue, see infra at pp. 16-23, on the attested statements of his counsel, who was without any personal knowledge of the certified events related to the incorrect address, or the receipt and reliance upon the investigation report.

information "plainly violate[]s the letter and spirit of N.J.S.A. 59:8-6," Wood, 302 N.J. Super. at 378. In addition, the specialized form was not submitted to defendants within a reasonable time after plaintiff learned of the deficiency. Henderson, 373 N.J. Super. at 637.

Without the additional information requested, such as a more precise itemization supporting plaintiff's $3 million-dollar-damages claim, information regarding plaintiff's insurer, a more expansive medical authorization to confirm and assess plaintiff's claims, or a response to the simple question if plaintiff ever filed a prior claim against Hackensack or its agents, the municipal entities were not provided "prompt access to information about the claim so that [they could] may prepare a defense." Wood, 302 N.J. Super. at 375. The missing information related directly to the purposes of notice under the TCA – the early assessment and resolution of claims.

As discussed infra, we cannot characterize plaintiff's failure to provide pertinent requested information about his injuries or medical record authorization as "technical deficiencies." D.D., 213 N.J. at 159. Nor did plaintiff sufficiently detail the "series of steps" he took to comply with the specialized form or provide a "reasonable explanation" about why he did not strictly comply with the TCA's requirements. Ferreira, 178 N.J. at 151.

Indeed, after Hackensack timely notified plaintiff regarding the deficiencies in his notice, he took no action for nearly six months until he filed an application, ostensibly to correct the mistaken incident address. His counsel's vague assertion that his office was unable to meet with plaintiff because of his injuries does not satisfactorily explain why plaintiff's counsel could not complete and send the specialized notice of claim form to defendants in a timely manner. We also note that as to the correct address of the incident, despite the receipt of the Department's report in late September 2019, counsel learned the correct address of plaintiff's alleged fall in December 2019, yet failed to advise the municipal defendants of that address until filing his motion in March 2020, three months later.

Unlike the authority upon which plaintiff relies, this is not a situation where defendants failed to notify plaintiff about deficiencies in his notices of claim. See e.g., Murray, 259 N.J. Super. at 362, 65. Nor is this a case like Ewing, Lebron, or Dambro where plaintiff took multiple steps in an attempt to strictly comply with the notice requirements. Ewing, 152 F. Supp. 3d at 297; Lebron, 407 N.J. Super. at 210-11; Dambro, 130 N.J. at 452-53. Rather, as in Wood, 302 N.J. Super. at 380, and Newberry, 319 N.J. Super. at 680, plaintiff offers no competent justification for his failure to comply with N.J.S.A. 59:8-

6's mandate within a reasonable time period. In sum, plaintiff's presumed but minimal compliance with N.J.S.A. 59:8-4 "cannot save [his] notice of claim" when defendants have a specialized notice of claim form. Wood, 302 N.J. Super. at 378.

IV.

Plaintiff further contends that the judge erred in denying him permission to file a late notice of claim because the judge incorrectly concluded that he did not establish extraordinary circumstances and failed to consider that defendants would not be prejudiced by a late filing. Specifically, plaintiff asserts his extensive injuries constitute extraordinary circumstances, and in support relies on O'Donnell v. New Jersey Turnpike Authority, 236 N.J. 335 (2019), Ventola v. New Jersey Veteran's Memorial Home, 164 N.J. 74 (2000), Lowe, 158 N.J. 606, Eagan v. Boyarsky, 158 N.J. 632 (1999), and Mendez v. South Jersey Transportation Authority, 416 N.J. Super. 525 (App. Div. 2010).

He also argues that the municipal defendants would not have been substantially prejudiced if the court granted his motion and they failed to provide any competent evidence of such prejudice, in any event. Defendants disagree and contend they established substantial prejudice because "the condition of the property is likely different after the significant time lapse," and they are unable

16

to "investigate the condition of the sidewalk . . . in close proximity to the date of the accident."  We agree with the judge that plaintiff failed to establish the existence of extraordinary circumstances, and therefore conclude the judge did not abuse his discretion in denying him permission to file a late notice of claim.

When a plaintiff fails to provide timely notice of a claim, the TCA permits a late filing under limited circumstances.  In this regard, N.J.S.A. 59:8-9 provides:

> A claimant who fails to file notice of his claim within [ninety] days as provided in [N.J.S.A.] 59:8-8 . . . may, in the discretion of a judge of the Superior Court, be permitted to file such notice at any time within one year after the accrual of his claim provided that the public entity . . . has not been substantially prejudiced thereby. Application to the court for permission to file a late notice of claim shall be made upon motion supported by affidavits based upon personal knowledge of the affiant showing sufficient reasons constituting extraordinary circumstances for his failure to file notice of claim within the period of time prescribed by [N.J.S.A.] 59:8-8 of this act or to file a motion seeking leave to file a late notice of claim within a reasonable time thereafter . . . .

The TCA does not define what constitutes "extraordinary circumstances," leaving "for a case-by-case determination . . . whether the reasons given rise to the level of extraordinary on the facts presented."  Lowe, 158 N.J. at 626 (internal quotation marks omitted).  "Where, of course, the late notice is merely

17

the result of the ambivalence of the claimant, this would be the very circumstance that the statute is designed to prevent, and relief should be denied." Randazzo v. Twp. of Washington, 286 N.J. Super. 215, 219 (App. Div. 1995) (citing Lutz v. Twp. of Gloucester, 153 N.J. Super. 461, 465-66 (App. Div. 1977)); see also Hyman Zamft & Manard, LLC v. Cornell, 309 N.J. Super. 586, 593 (App. Div. 1998) (concluding that "ignorance of the law or failure to seek legal advice will not excuse failure to meet the [TCA] filing deadline").

As the Supreme Court explained:

> The Legislature's grant of authority to trial courts to permit a late notice in the exercise of their discretion does not equate with a grant of authority to override the statute's declaration of purpose or to substitute a lesser standard of proofs . . . . Trial courts, in exercising their statutory authority, and appellate courts, in reviewing those decisions, must ensure that their decisions are faithful to the overall legislative framework in order that the statute's essential purposes be preserved and not eroded through excessive or inappropriate exceptions. Courts faced with applications for leave to file a late notice of claim, therefore, must proceed with their evaluation mindful of the Legislature's direction that the proofs demonstrate circumstances that are not merely sufficient, but that they instead be extraordinary.
>
> [D.D., 213 N.J. at 148-49.]

Medical conditions meet the extraordinary circumstances standard if they are "severe or debilitating" and have a "consequential impact on the claimant's

18

very ability to pursue redress and attend to the filing of a claim." Id. at 149-50; See also Mendez, 416 N.J. Super. at 533 (noting that "extraordinary circumstances can be found based on the severity of a party's injuries"). The question for the court is whether, when viewed objectively, a severe or debilitating injury impaired the plaintiff's ability to act during the relevant ninety-day period. D.D., 213 N.J. at 151.

We found in Maher v. County of Mercer, that the "circumstances that led to the delay in filing the notice and the motion were truly extraordinary." 384 N.J. Super. 182, 189 (App. Div. 2006). In that case, the plaintiff was hospitalized after receiving a burn, which then caused septic shock, a staph infection, pneumonia, respiratory failure, and memory loss. Id. at 184-85. The plaintiff was placed in an induced coma during her first hospitalization, because she was not expected to live, remained in "extremely poor health," and had repeated admissions to the hospital within the ninety-day period. Id. at 189-90; see also R.L. v. State-Operated Sch. Dist., 387 N.J. Super. at 334, 341 (App. Div. 2006) (finding extraordinary circumstances when the delay in filing was due to the plaintiff's psychological trauma, which caused him emotional distress, periods of crying, preoccupation with death, and ultimately a hesitancy to reveal his HIV status). But see O'Neill v. City of Newark, 304 N.J. Super. 543, 554

(App. Div. 1997) (finding that a plaintiff preoccupied with recovery and treatment efforts did not sufficiently demonstrate a showing of extraordinary circumstances to justify a delay in filing a timely notice).

In addition to the extraordinary circumstances requirement, a plaintiff will be precluded from filing a late notice of claim if the public entity will be substantially prejudiced. However, "it is the public entity that has the burden of coming forward and of persuasion on the question of [substantial] prejudice." Blank v. City of Elizabeth, 318 N.J. Super. 106, 114 (App. Div. 1999). "The fact of delay alone does not give rise to the assumption of prejudice; the public entity must present a factual basis for the claim of substantial prejudice." Mendez, 416 N.J. Super. at 535 (citing Kleinke v. Ocean City, 147 N.J. Super. 575, 581 (App. Div. 1977)).

"Substantial prejudice must be shown by 'specificity and not by general allegation . . . .'" Id. at 536 (alteration in original) (quoting Blank, 318 N.J. Super. at 115). A defendant's general contentions that it was "totally unaware of the accident" and "lost a critical opportunity to engage in a timely investigation" is insufficient to constitute the substantial prejudice requirement under N.J.S.A. 59:8-9. Id. at 535. Substantial prejudice "[g]enerally . . . implies

the loss of witnesses, the loss of evidence, fading memories, and the like." Blank, 318 N.J. Super. at 115.

Against that standard of review and substantive legal principles, we are satisfied that the judge did not err in concluding plaintiff failed to establish extraordinary circumstances justifying his late notice of claim. Plaintiff fell on July 22, 2019 and filed his application for permission to file a late notice of claim on March 19, 2020, an approximate eight-month delay.

Even accepting Martinez's certification, of which there are severe evidentiary deficiencies,[2] the only information about how plaintiff's injury limited him was that he was "unable" to meet with his attorneys to "confirm the location of his fall" for at least six weeks from September 6, 2019. Even then, plaintiff did not do so until December 2019, and waited an additional four months before moving to file a late notice of claim.

---

[2] N.J.S.A. 59:8-9 specifically requires affidavits "based upon personal knowledge of the affiant." See, e.g., S.P. v. Collier High School, 319 N.J. Super. 452, 465 (App. Div. 1999) (finding a motion for late notice of claim inadequate where the plaintiff relied on an attorney's affidavit and did not submit an affidavit based upon personal knowledge). Here, as noted, Martinez was not employed with the firm representing plaintiff until January 2020, approximately six months after his fall, and would not have any personal knowledge about plaintiff's injuries or the firm's communication with plaintiff during that time period.

Missing from the record is sufficient information regarding how plaintiff was physically or psychologically unable to communicate with his attorneys because of his injuries. Of the two medical reports plaintiff provides, the last of which is dated September 10, 2019, neither describes how plaintiff's mobility was limited other than difficulties with moving his elbow. Indeed, plaintiff was able to provide information to his attorneys sufficient for the first notices of claim, but he fails to explain how his injury prevented him from filing the specialized notices. As the judge noted, it is unclear why plaintiff's attorneys could not meet with him at the rehabilitation center.

Mendez, upon which plaintiff relies, is clearly distinguishable. In that case, the plaintiffs were unable to obtain evidence identifying the municipally-operated tortfeasor until after the notice period had run. Here, all the information plaintiff needed to supplement his notice consistent with the specialized claim form was available to him and his attorneys well before his motion was filed, and when he ultimately completed the specialized forms. Mendez, 416 N.J. Super. at 529-34. Nor is this a situation like Lowe, Eagan, or Ventola, where the identity and the public nature of the tortfeasors or location of the incident were somehow disguised, Lowe, 158 N.J. at 629-30; Eagan, 158 N.J. at 642-43; Ventola, 164 N.J. at 78-82, or where Hackensack or any of its

22

agents learned about material information regarding the claim from another plaintiff such as in O'Donnell, 236 N.J. at 339. In sum, based on the motion record, there is simply no evidence that plaintiff's condition and circumstances were so "severe or debilitating" that they had a "consequential impact" on his "ability to pursue redress and attend to the filing of a claim." D.D., 213 N.J. at 149-50.

In light of our conclusion that plaintiff failed to establish extraordinary circumstances justifying his late notice, we need not reach the issue of whether defendant established prejudice. To the extent we have not addressed any of plaintiff's remaining arguments, it is because we have concluded they are of insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION